REVISED MAY 30, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-10801

_____


MACK ORAN HILL

                           Petitioner - Appellant

     v.

GARY L JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION

                           Respondent - Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

April 20, 2000

Before KING, Chief Judge, and JOLLY and PARKER, Circuit Judges.

KING, Chief Judge:

     As is required under 28 U.S.C. § 2253(c), Texas death row
inmate Mack Oran Hill requests that we grant a certificate of
appealability to enable him to obtain review of the district
court's denial of habeas relief.  For the reasons that follow, we
deny his request.

I.   PROCEDURAL BACKGROUND

     Following a jury trial, Mack Oran Hill ("Hill") was
convicted of capital murder on July 7, 1989, and was sentenced to
death on August 3, 1989.  The Texas Court of Criminal Appeals

affirmed his conviction and sentence on May 5, 1993. Hill's writ of certiorari was denied on June 13, 1994. See Hill v. Texas, 512 U.S. 1213 (1994).

Hill was appointed counsel to represent him in state habeas proceedings on March 24, 1997. With the permission of the Court of Criminal Appeals, Hill's counsel filed in state court on April 11, 1997 a skeletal petition for habeas relief, and filed a complete petition on December 17, 1997. In the latter petition, Hill asserted eight grounds for relief. On August 5, 1998, the state habeas court, which was also Hill's trial court, held an evidentiary hearing on Hill's claim that the district attorney improperly withheld information as to the existence of a deal for leniency with several witnesses who testified at Hill's trial. Shortly after the conclusion of that hearing, the state court recommended that relief be denied, and on November 12, 1998 issued its findings of fact and conclusions of law. The Texas Court of Criminal Appeals denied relief with written order on February 24, 1999.

Hill's counsel almost immediately filed a motion for equitable tolling of the statute of limitations of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, arguing that the significant delay in appointing counsel for purposes of Hill's state habeas proceedings warranted tolling. The filing of the skeletal petition had stayed the statute of limitations, see 28 U.S.C.

2

§ 2244(d)(2), but left only 13 days remaining in Hill's one-year grace period.  See Flanagan v. Johnson, 154 F.3d 196, 200 (5th Cir. 1998) (applying rule announced in United States v. Flores, 135 F.3d 1000 (5th Cir. 1998), to petitions filed under 28 U.S.C. § 2254 and thus allowing prisoners whose convictions were final before AEDPA's effective date until April 24, 1997 to file petitions in federal court).  The court denied the benefits of equitable tolling, but construed Hill's motion as one for an extension under 28 U.S.C. § 2263.  The court granted an extension until March 31, 1999.

Hill filed his petition seeking federal habeas relief on March 30, 1999.  He filed motions under 21 U.S.C. § 848(q)(4)(B) seeking the assistance of a forensic expert (on June 7, 1999), and of an investigator for discovery purposes (on June 11, 1999), and under Rule 6 of the Rules Governing Section 2254 Cases seeking additional discovery (on June 11, 1999).  Each of these motions was denied the same day it was filed.  The district court held on June 11 a hearing regarding Respondent Gary L. Johnson's ("Respondent") June 10 motion for summary judgment, and on July 1, issued its findings of fact and conclusions of law, granted Respondent's motion, and entered a judgment dismissing Hill's petition with prejudice.

Hill filed a timely notice of appeal.  He sought a certificate of appealability ("COA") from the district court on

3

June 30, 1999.  The district court declined to grant a COA on any of the issues he raises before us.

## II.  DISCUSSION

Hill seeks a COA from this court on four issues relating to his state trial.  Hill alleges that the district attorney failed to reveal implied understandings for leniency between himself and several witnesses, failed to correct false and misleading testimony, and failed to disclose impeachment evidence.  He also asserts that his due process and equal protection rights were violated when the Texas Court of Criminal Appeals failed to utilize the "reasonable alternative hypothesis" construct for review of the sufficiency of circumstantial evidence entered against him, in direct contravention of its own decision to apply that construct to cases such as his.  In addition, Hill challenges the district court's denial of his motions requesting additional discovery, and the assistance of a forensic expert and of an investigator, and its granting of Respondent's motion for summary judgment.

Hill's petition for federal habeas relief was filed on March 30, 1999, and therefore his case is governed by the provisions of the AEDPA.  See Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997).  Under 28 U.S.C. § 2253(c)(1)(A), Hill must first obtain a COA before he may obtain appellate review of the district court's denial of habeas relief.  A COA can issue only

4

if Hill makes a "substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). Such a showing "requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" Drinkard v. Johnson, 97 F.3d 751, 755 (5th Cir. 1996) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (1997). We resolve doubts about whether to grant a COA in Hill's favor, and we may consider the severity of his penalty in determining whether he has met his "substantial showing" burden. See Fuller v. Johnson, 114 F.3d 491, 495 (5th Cir.), cert. denied, 522 U.S. 963 (1997).

In assessing whether Hill is entitled to a COA, we must keep in mind the deference scheme laid out in 28 U.S.C. § 2254(d). See Trevino v. Johnson, 168 F.3d 173, 181 (5th Cir.), cert. denied, 120 S. Ct. 22 (1999). Under that scheme, we review pure questions of law and mixed questions of law and fact under § 2254(d)(1), and review questions of fact under § 2254(d)(2), provided that the state court adjudicated the claim on the merits. See 28 U.S.C. § 2254(d). The Texas Court of Criminal Appeals explicitly adopted the findings of fact and conclusions of law of the trial court, and denied relief. This qualifies as an "adjudication on the merits." See Trevino, 168 F.3d at 181;

5

Davis v. Johnson, 158 F.3d 806, 812 (5th Cir. 1998), cert. denied, 119 S. Ct. 1474 (1999).

As a result, we must defer to the state court unless its decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, -- U.S. -- , 120 S. Ct. 1495, 2000 WL 385369, at *28 (2000). Under § 2254(d)(1)'s "unreasonable application" language, a writ may issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 2000 WL 385369, at *28. Factual findings are presumed to be correct, see 28 U.S.C. § 2254(e)(1), and we will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

A.

In his first challenge, Hill contends that the State violated the commands of Giglio v. United States, 405 U.S. 150

6

(1972), in failing to reveal implied understandings for leniency between the district attorney and two witnesses, Danny and Allen Crawford. The Crawfords testified at Hill's trial regarding the removal of property from the shop of the individual Hill was accused of murdering. That an accused's constitutional rights are violated when the State withholds material evidence affecting the credibility of witnesses is well-established. See, e.g., Pyles v. Johnson, 136 F.3d 986, 998 (5th Cir.), cert. denied, 524 U.S. 933 (1998). In general, a petitioner seeking habeas relief who asserts that the State violated its duty to disclose material evidence must demonstrate that (1) the prosecution withheld evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material. See Pyles, 136 F.3d at 998; Spence v. Johnson, 80 F.3d 989, 994 (5th Cir. 1996). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). As the Supreme Court has noted, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434 (1995).

The state habeas court conducted an evidentiary hearing regarding Hill's contention that the State withheld evidence of

7

deals for leniency, and reviewed an audio tape that the district attorney had made of a telephone conversation between himself and David Schulman, the attorney for Allen Crawford.  The court subsequently denied relief, finding that there were "no deals, express, implied or otherwise offered to any witness that were not disclosed to Applicant's trial attorneys."

Hill contends that the state habeas court misrepresented and misapplied the facts brought forth at the evidentiary hearing. In particular, he argues that the state court relied on the audio tape and ignored uncontradicted evidence suggesting that the tape had been altered, and that the court further ignored evidence that indicates that Allen Crawford and Schulman were led to believe that some consideration would be given in return for Crawford's testimony.

The district court, after reviewing the record, concluded that, at most, three individuals had a subjective belief that there was an implied deal, but that the record did not support the conclusion that the district attorney intended to make, or actually made, a deal for leniency in exchange for the witnesses' testimony.  The district court also concluded that Hill had not presented evidence sufficient to rebut the presumption of correctness a federal court must apply to the state court's findings of fact, and that Hill had not shown that the state court's conclusions were unreasonable in light of the evidence.

The district court also denied Hill's request for a forensic expert to examine the audio tape made by the district attorney, and his motions for additional discovery and for the appointment of an investigator. In his latter motions, Hill sought the transcripts of hearings in another individual's state habeas proceedings, which Hill believed contained evidence that the district attorney maintained a secret file containing possibly exculpatory information related to capital cases, and that the contents of that secret file had been destroyed. This evidence, Hill contended, supported the inference of a continuing pattern of misconduct on the part of the district attorney. Hill also wished to interview witnesses from the other individual's state habeas hearing regarding facts relating to Hill's case, or to the credibility of individuals involved in Hill's case.

We conclude that Hill has not made a substantial showing of the denial of a constitutional right. With regard to the state court's findings of fact, Hill's basic argument is that the court, after granting an evidentiary hearing, "ignored" some evidence but accepted other evidence. Much is made of Schulman's testimony at the evidentiary hearing suggesting that the district attorney altered the tape recording of a telephone conversation between the two. However, Hill notes that evidence that the district attorney altered the tape would go to the district attorney's credibility; he does not contend that the tape contained the district attorney's admission of the existence of a

9

deal.  Given the testimony of other witnesses that there was no deal, Hill has not come close to rebutting by clear and convincing evidence the presumption of correctness that we must accord the state court's findings.  In addition, Hill neither points to a Supreme Court decision holding that the subjective beliefs of witnesses regarding the possibility of future favorable treatment are sufficient to trigger the State's duty to disclose under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio,[1] nor gives us cause to believe that the state court's conclusions involved an unreasonable application to the facts of law existing at the time of its decision.  Cf. Williams, 2000 WL 385369, at *28 (explaining that "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision").

Related to Hill's Giglio claim is his contention that the district court abused its discretion in denying his requests under 21 U.S.C. § 848(q)(4)(B) for assistance of a forensic audio expert to analyze the district attorney's tape recording and for the assistance of an investigator.  Under § 848(q)(4)(B)(9), the

---

[1]  As Hill observes, the Court's decision in Giglio addressed the State's duty to disclose an express agreement between the State and a witness.  Although we are restricted by 28 U.S.C. § 2254(d)(1) to evaluate the state court's decision in light of Supreme Court precedent, we note that this circuit has held that a witness' "nebulous expectation of help from the state" is not Brady material.  See Goodwin v. Johnson, 132 F.3d 162, 187 (5th Cir. 1998); United States v. Nixon, 881 F.2d 1305, 1311 (5th Cir. 1989).

10

district court, "[u]pon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, . . . . may authorize the defendant's attorneys to obtain such services . . . ."  To be entitled to the assistance of a forensic audio expert or an investigator, Hill must show indigence and that the requested assistance is reasonably necessary for his representation.  See Fuller, 114 F.3d at 502.

We find no abuse of discretion.[2]  Hill's request for a forensic expert is motivated by an attempt to gain additional evidence supporting Schulman's suggestion that the district attorney's audio tape was altered.  Schulman testified at the state habeas court's evidentiary hearing that a complete playing of the tape (i.e., without the alleged editing) would make it clear that his statements regarding consideration to be given were true.  Schulman did not testify that the district attorney stated during their phone conversation that there was a deal, and in fact stated that there was no express deal.  His statements regarding consideration indicated only that when he and Allen Crawford had left a meeting with the district attorney, they were under the impression that Crawford would get some unspecified consideration for his testimony.  Thus, the primary evidence that the forensic expert would be able to supply — i.e., that the tape was altered — would do nothing to make viable  Hill's Giglio

---

[2]  A COA is not required for appeals under § 848(q)(4)(B). See Sterling v. Scott, 57 F.3d 451, 454 n.3 (5th Cir. 1995).

11

claim. Under these circumstances, the district court did not abuse its discretion in denying Hill's request for a forensic expert.

Also related to Hill's Giglio claim is his request for a COA on the district court's denial of his motion for additional discovery pertaining to the district attorney's activities. We conclude that Hill has not demonstrated that the question whether the district court abused its discretion in denying this request is debatable among jurists of reason. In order to be entitled to additional discovery, Hill must show "good cause." See Rules Governing Section 2254 Cases 6(a) ("A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."). As we recently noted, "[g]ood cause may be found when a petition for habeas corpus relief 'establishes a prima facie [case] for relief.'" Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000) (quoting Harris v. Nelson, 394 U.S. 286, 289 (1969)). In addition, Hill's factual allegations must be specific, as opposed to merely speculative or conclusory, to justify discovery. See Murphy, 205 F.3d at 814. "Rule 6 . . . does not authorize fishing expeditions." Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994); see also Murphy, 205 F.3d at 814.

12

The district court could easily conclude that Hill had not shown "good cause" for discovery related to the district attorney's alleged maintenance and destruction of a secret file. None of the evidence he seeks can transform Hill's contention that parties left a meeting with the district attorney entertaining the belief that some unspecified consideration may be forthcoming in the future into a viable claim that the district attorney withheld from Hill and his counsel information regarding a deal for leniency in return for witness testimony. Cf. Murphy, 205 F.3d at 814 (concluding that petitioner had failed to demonstrate the existence of a deal or that proof of a deal would be material).[3] We therefore decline to issue a COA on Hill's Giglio claim, and on the related discovery issue.

B.

Hill's second and third grounds for relief deal with the sentencing phase of his trial, and in particular, the testimony of a psychiatric expert, Dr. James Grigson, regarding the probability that Hill would in the future be a danger to society. Before the state habeas court, Hill contended the State withheld the existence and the contents of the "Kinne Report," which purportedly was in the possession of Dr. Grigson and described the conduct of individuals whom he had testified would "with

---

[3] As a result, we find as well that the district court did not abuse its discretion in denying the assistance of an investigator.

13

certainty" be future dangers.  The Report purportedly indicated that those individuals whose sentences were commuted to life imprisonment were model, or at least well-adapted, prisoners. Hill contended that, had he had been given the Report, he could have used it to impeach Dr. Grigson's testimony regarding his predictions of future dangerousness.

Hill charges the State with both the failure to provide him with the Kinne Report in violation of Brady v. Maryland, 373 U.S. 83 (1963), and failure to correct false and misleading testimony given by Dr. Grigson about the accuracy of his predictions in violation of Napue v. Illinois, 360 U.S. 264 (1959).  We have indicated above what Hill must prove in order to establish a Brady violation.  In order to show that the State failed to correct false and misleading testimony, Hill must demonstrate that (1) "'the testimony was actually false,'" (2) "'the state knew it was false,'" and (3) "'the testimony was material.'" Pyles, 136 F.3d at 996 (quoting Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996)).

The state habeas court did not conduct an evidentiary hearing on these issues.  It found that the State had no knowledge of the Kinne Report at the time of Hill's trial, that the Kinne Report was "nothing more than a list of a certain number of inmates from Dallas County and a report of their conduct while in prison," that the letter did not contain information that made Dr. Grigson's predictions more or less

14

probable, that Dr. Grigson was not an "arm of the prosecution," and that the defense's expert ably impeached Dr. Grigson's testimony.  The state court concluded that Hill's claims were not supported by credible evidence in the record, or by evidence submitted to the state habeas court.

The district court concluded that Hill's claims failed because he had not demonstrated that (1) Dr. Grigson's testimony was perjured, (2) the Kinne Report was in possession of Dr. Grigson or the prosecution, and (3) the Kinne Report was unattainable through reasonable diligence.  In Hill's discovery motion, he stated he was requesting additional discovery in part to obtain information related to his second and third claims. That information regarded when Dr. Grigson became aware of the contents of the Kinne Report, whether he communicated the contents to members of the district attorney's office, and the nature of the relationship between Dr. Grigson and that office. As we noted above, the district court denied his motion.

Beyond arguing that the state court's findings are not deserving of the statutory presumption of correctness, Hill's challenge to the state court's action focuses on its application of law underlying its finding that Dr. Grigson was not an "arm of the state," and its conclusion that the Kinne Report was not "impeachment" evidence.[4]  We begin with an assessment of Hill's

---

[4]  Hill also attacks the state court's "alternative" conclusion that Hill's claims were disposed of by <u>Clark v. State</u>, 881 S.W.2d 682, 687 (Tex. Crim. App. 1994).  We find we do not

15

contention that the state habeas court's finding that Dr. Grigson was not an "arm of the prosecution" reflected an improper application of law to the facts. Hill relies principally on the Supreme Court's description of Dr. Grigson's role in Estelle v. Smith, 451 U.S. 454, 467 (1981) ("When Dr. Grigson went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase on the crucial issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting."), to support his challenge to the state court's finding. Hill interprets the Court's language as suggesting that when Dr. Grigson testifies as to an individual's future dangerousness, he is necessarily an agent of the State. This is not what the Supreme Court held. Moreover, Hill has given us no reason to believe that his case was factually similar to that of the defendant in Smith.[5] We therefore conclude that the Court's language in Smith is not applicable to Hill's case.

---

need to address these arguments.

    [5] Unlike the situation in Smith, the record does not reveal that Hill was examined by Dr. Grigson prior to his giving testimony, or that Dr. Grigson's testimony as to his predictions of Hill's future dangerousness was based on any examination of Hill. Instead, Dr. Grigson was given a hypothetical, and asked for his assessment of the likelihood that the individual described in the hypothetical would be a continuing threat to society.

16

With no other basis for challenging the state habeas court's finding that Dr. Grigson was not an arm of the prosecution, Hill cannot meet his burden of making a substantial showing of a denial of a constitutional right. Hill contends that the state court's findings should not be presumed correct because the state court denied him an evidentiary hearing. However, we have frequently noted that the absence of an evidentiary hearing at the state level does not lead to the conclusion that the state court's findings should not be presumed correct. See, e.g., Carter v. Johnson, 131 F.3d 452, 460 n.13 (5th Cir. 1997) ("We have consistently recognized that, to be entitled to the presumption of correctness, a state court need not hold an evidentiary hearing . . . ."), cert. denied, 523 U.S. 1099 (1998). As we recently observed, this court has "repeatedly found that a paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying his claims, especially where . . . the trial court and the state habeas court were one and the same." Murphy, 205 F.3d at 816 (citing Perillo v. Johnson, 79 F.3d 441, 446-47 (5th Cir. 1996)).

Hill was given an opportunity during the state habeas proceedings to provide evidence supporting any allegation he may have made that the State (as distinguished from Dr. Grigson) possessed the Kinne Report, or knew of its existence and contents, and to argue that the Report was material, i.e., that in its absence, he did not receive "a fair trial, understood as a

17

trial resulting in a verdict worthy of confidence." <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995).  The state court found that the State did not have knowledge of the Kinne Report at the time of Hill's trial, and that even without that Report, defense counsel ably impeached Dr. Grigson's testimony.

Hill attempted to gain evidence rebutting these findings through additional discovery.  However, his request for additional discovery indicates that he had no evidence supporting knowledge on the part of the State (as distinguished from Dr. Grigson) while before the district court.[6]  In a previous case, we concluded that "[m]ere speculative and conclusory allegations that the [State] might have known about [the alleged impeachment material] are not . . . sufficient to entitle [a petitioner] to discovery . . . ."  <u>East v. Scott</u>, 55 F.3d 996, 1003 (5th Cir. 1995); <u>see also</u> <u>Murphy</u>, 205 F.3d at 814.  We conclude that Hill has not shown that jurists of reason would find debatable the question whether the district court abused its discretion in denying Hill's request for additional discovery.  We must therefore decline his request for a COA on his second and third grounds for relief.

C.

---

[6]  The state court's conclusions of law regarding Hill's Brady claim also suggest that Hill produced no evidence indicating that the State had prior knowledge of the Kinne Report.

18

Hill next challenges the Texas Court of Criminal Appeals' failure to apply the "reasonable alternative hypothesis" in its review of the sufficiency of circumstantial evidence in his case. He argues that this failure constituted a violation of his due process and equal protection rights under the U.S. Constitution because the Court of Criminal Appeals had stated in Geesa v. State, 820 S.W.2d 154, 165 (Tex. Crim. App. 1991), that the "reasonable alternative hypothesis" standard would be applied in cases pending appeal at the time. His was such a case.

The state habeas court did not conduct an evidentiary hearing on this claim. It found that the changes implemented by Geesa were "procedural in nature and do not implicate any constitutional rights," using language from Geesa in support. See 820 S.W.2d at 163 ("The rules are not of constitutional dimension per se; rather, the rules serve to implement the constitutional requirement that a criminal conviction cannot stand except upon proof beyond a reasonable doubt." (internal quotation marks omitted)). The state court concluded that all defendants were treated equally because in all cases, the State had to prove guilt beyond a reasonable doubt. The district court essentially came to the same conclusions.

Hill contends that the state habeas court misconstrued his claim as one challenging the sufficiency of the evidence. He asserts that instead his claim is that the Texas Court of Criminal Appeals' Geesa decision created a classification of

19

appellants, and gave those appellants whose cases were tried before <u>Geesa</u> a protected interest. The Court of Criminal Appeals' failure to apply the reasonable alternative hypothesis construct deprived him of his right to treatment equal to that given similarly situated individuals whose claims were reviewed under the reasonable alternative hypothesis standard, and deprived him of his due process rights because the Court of Criminal Appeals failed to follow its own precedent.

We are not persuaded that the state habeas court incorrectly interpreted Hill's claims. At the heart of those claims is the contention that the state court's failure to follow its own rules regarding the analysis it would undertake in reviewing a case on appeal violated the U.S. Constitution. Even if we assume that the "reasonable alternative hypothesis" analysis was an explicit procedural protection and that the Court of Criminal Appeals did not apply that analysis to Hill's case, we must deny a COA on this issue.

Notably, Hill does not assert that the analysis the Texas Court of Criminal Appeals applied to his case violates the Due Process Clause. <u>See</u> <u>Murphy v. Collins</u>, 26 F.3d 541, 543 (5th Cir. 1994) (noting that a state's failure to follow its own rules does not violate the Constitution where "'constitutional minima [have] nevertheless . . . been met'") (quoting <u>Jackson v. Cain</u>, 864 F.2d 1235, 1251 (5th Cir. 1989)). Thus, his argument focuses on the mere failure of the state court to follow the rule

20

applicable to pending cases that it devised in Geesa.  Although

Hill relies heavily on Supreme Court cases to support his

contention that his rights under the U.S. Constitution have been

violated, none of the cases he cites provides the rule that he

needs to prevail: that a state court's failure to follow its own

holding and apply one procedural rule rather than another

constitutes, by itself, a violation of the Due Process Clause.[7]

We conclude that Hill has not met his burden of making a

substantial showing of a denial of a constitutional right.

The "reasonable alternative hypothesis" analysis merely

provided a reviewing court with a means to assess whether a

rational trier of fact could find the defendant guilty beyond a

reasonable doubt.  See Butler v. State, 769 S.W.2d 234, 238 n.1

(Tex. Crim. App. 1989) ("[W]e do not mean to imply an adoption of

[the reasonable hypothesis theory] as the standard of review for

the sufficiency of the evidence.  The reasonable hypothesis

theory as utilized by this Court is merely an analytical

construct to facilitate the application of the [Jackson v.

Virginia, 443 U.S. 307 (1979)] standard.").  Even if the Texas

Court of Criminal Appeals did not apply the construct it

indicated in Geesa it would to a case such as Hill's, and in

doing so, violated "the law," this was a violation of state law.

_____

[7]  We have previously held that the type of claim Hill makes
lacks merit.  See, e.g., Giovanni v. Lynn, 48 F.3d 908, 912 (5th
Cir. 1995) ("Mere failure to accord the procedural protections
called for by state law or regulation does not of itself amount
to a denial of due process.").

21

The Supreme Court has repeatedly stated that such a violation is not the concern of a federal habeas court. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States."). Because Hill's claims regard, at best, a state-law violation, we must deny a COA.

## D.

In his final challenge, Hill contends that the district court erred in granting summary judgment without giving him an adequate opportunity for discovery and factual development of his claims. Given our disposition of his other claims, we deny a COA on this issue as well.

## III. CONCLUSION

For the foregoing reasons, we DENY Hill's request for a COA.