IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-50027
_____


OLIVER DAVID CRUZ

             Petitioner - Appellant

   v.

GARY L JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION

             Respondent - Appellee

_____

Appeal from the United States District Court
for the Western District of Texas
(5:98-CV-132)
_____

July 21, 2000

Before KING, Chief Judge, and JOLLY and DeMOSS, Circuit Judges.

PER CURIAM:[*]

     Texas death row inmate Oliver David Cruz applies to this

court for a certificate of appealability to enable him to obtain

review of the district court's denial of his federal habeas

petition.  For the reasons that follow, we deny his application.


## I.   FACTUAL AND PROCEDURAL BACKGROUND

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In 1989, a Texas jury convicted Petitioner-Appellant Oliver David Cruz of the brutal 1988 rape and murder of Kelly Donovan. The disposition of Cruz's application for a certificate of appealability ("COA") does not require that we describe the details of the crime.

During the guilt/innocence phase of Cruz's trial, Dr. Wayne Gill, a clinical psychologist, testified that he tested Cruz's IQ using both the verbal Wechsler Adult Intelligence Scale and the Slosson Intelligence Test. He further testified that Cruz scored a 76 on the verbal Wechsler and 64 on the Slosson Test. He described a score of 76 as "[b]orderline IQ" and a score of 64 as "within the retarded range." State Record at 3791. This evidence was offered, along with other evidence, to establish that Cruz was functionally illiterate in English and could not have understood two typed confessions he signed. Dr. Gill was recalled during the penalty phase of the trial and testified that, in his opinion, Cruz was a follower and not a leader.

Diana Rangel, who was a case worker for the City of San Antonio Youth Services at the time she met Cruz, also testified during the penalty phase of the trial. She testified that she met with Cruz several times between 1981 and about 1983 or 1984, when Cruz was between 14 and about 18 years old. She had not seen Cruz since that time. Like Dr. Gill, she testified that Cruz was "[d]efinitely a follower." State record at 4077.

2

Several months before Cruz's trial, the United States Supreme Court announced its decision in <u>Penry v. Lynaugh</u>, 492 U.S. 302 (1989). In <u>Penry</u>, the Supreme Court held that, under the facts of that case, the Texas capital sentencing structure[1] ran afoul of the Eighth Amendment. The Supreme Court concluded that, "in the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation[2] and abused background by declining to impose the death penalty, . . . the jury was not provided with a vehicle for expressing its 'reasoned moral response' to that

---

[1] Under the capital sentencing structure in place at the time of both Penry's and Cruz's trials, the jury was presented with two or three special issues. The jury's answers to the special issues were determinative of whether the defendant received a penalty of life in prison or death. The special issues in Cruz's case were, in all relevant respects, identical to the first two special issues in <u>Penry</u>. They read:

> Do you find from the evidence beyond a reasonable doubt that the conduct of the defendant, Oliver Cruz, that caused the death of the deceased was committed deliberately and with a reasonable expectation that the death of Kelly Donovan would result?
>
> . . . Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Oliver Cruz, would commit criminal acts of violence that would constitute a continuing threat to society?

State Record at 4096-97.

[2] As compared to Cruz's case, the evidence of mental deficiency was more pronounced in <u>Penry</u>. IQ tests administered over the years indicated Penry had an IQ between 50 and 63. <u>See</u> <u>Penry</u>, 492 U.S. at 307-08. There was also evidence that Penry suffered from organic brain damage as well as retardation, the combination of which "resulted in poor impulse control and an inability to learn from experience." <u>Id.</u> at 308.

3

evidence in rendering its sentencing decision." Id. at 328
(footnote added).

Considering the holding in Penry and the evidence presented
in Cruz's case, the state trial court determined that it should
provide an instruction on mitigation. It drafted an instruction
and gave defense counsel an opportunity to suggest changes to the
instruction. Defense counsel took the position that the state of
the law in Texas made it impossible to draft a Penry instruction
that would pass constitutional muster. The court therefore gave
the instruction it prepared.[3] The jury returned positive

---

[3] The instruction read, in pertinent part:

> You are instructed that the State must prove each issue
> beyond a reasonable doubt. You are instructed that you
> shall consider any evidence introduced during this trial,
> which in your opinion either mitigates against the
> imposition of the death penalty or indicates the aggravating
> nature of the offense alleged.
>
> It is for the jury to consider and give effect to
> mitigation or aggravating evidence. Such evidence may
> include but is not limited to facts surrounding the
> defendant's background, reputation, character or record, and
> the circumstances of the commission of the offense.
> Evidence of this nature may or may not form the basis for a
> sentence less than death.
>
> In this connection, if such evidence causes you to have
> a reasonable doubt as to whether or not a true answer to any
> of the special issues should be yes, then under such
> circumstances, such doubt should be resolved in favor of the
> defendant, and the answer to such special issue should be
> no. Therefore, you should consider when weighing answering
> the special issue yes or no, all mitigating as well as
> aggravating circumstances represented by the evidence in the
> case.
>
> In connection with the above and foregoing paragraph,

4

responses to both of the special issues and Cruz was sentenced to death.

On direct appeal, Cruz argued that the trial court erred in failing to instruct the jury properly on, among other things, Cruz's mental retardation; he asserted that the trial court erred in failing "to provide a jury instruction allowing the jury to express a reasoned moral response to potentially mitigating evidence." Cruz v. State, No 71,004, slip op. at 29 (Tex. Ct. Crim. App. Jun 23, 1993) (en banc). The Texas Court of Criminal Appeals decided, first, that Cruz had preserved these points of error. The court then cited numerous cases, including one standing for the proposition that "[e]vidence of reduced mental capacity/low level of intelligence is . . . able to be considered within the special issues and do [sic] not require any such [Penry] additional instructions." Id. at 32. The court concluded that "in light of the above-noted cases, and the . . . additional instruction on mitigation, there was no failure to properly instruct the jury with regard to appellant's proffered mitigating evidence."[4] Id. Ultimately, the Texas Court of

_____

> evidence may be considered by you to be mitigating if it is such as does not constitute an excuse or justification for the crime, but which in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability for the crime.

State Record at 4092-93.

[4] In its order denying Cruz's federal habeas petition, however, the district court stated that "the Texas Court of

5

Criminal Appeals affirmed Cruz's conviction and sentence, see id. at 33, and the United States denied Cruz's petition for a writ of certiorari. See Cruz v. Texas, 513 U.S. 965 (1994).

Cruz then filed a petition for habeas relief in the Texas state court system, raising, among others, the Penry-based claims raised on direct appeal. In its findings of facts and conclusions of law, the state trial court declined to address these federal constitutional claims because they had been addressed by the Texas Court of Criminal Appeals on direct review. See Ex parte Cruz, No. 89-CR-1732A-W1 (Tex. Dist. Ct. Sept. 11, 1997) (order on writ of habeas corpus). The Texas Court of Criminal Appeals determined that the trial court's findings of facts and conclusions of law were supported by the record and denied relief. See Ex parte Cruz, No. 29,545-05 (Tex Ct. Crim. App. Oct. 15, 1997).

Cruz then sought habeas relief in the federal district court. In an unpublished opinion, the district court denied

Criminal Appeals expressly rejected petitioner's Penry claims, holding that petitioner's evidence of his low intelligence, deprived childhood, and good character traits could all be adequately considered within the scope of the Texas capital sentencing Special Issues without the necessity of a Penry instruction." Cruz v. Johnson, No. SA-98-132-FB, slip op. at 61-62 (W.D. Tex. Nov. 9, 1999) (memorandum opinion and order denying habeas corpus relief). Before this court, Cruz does not dispute the district court's characterization of the decision of the Texas Court of Criminal Appeals. We agree with the district court. It appears that the Texas Court of Criminal Appeals concluded that Cruz was not entitled to a Penry instruction and that, alternatively, the instruction given was adequate under Penry.

6

relief and sua sponte denied Cruz a COA.  See Cruz v. Johnson, No. SA-98-132-FB (W.D. Tex. Nov. 9, 1999) (memorandum opinion and order denying habeas corpus relief) [hereinafter District Court Opinion].  Cruz filed a Motion for a Certificate of Appealability and Stay of the Proceedings in this court on March 16, 2000.  Cruz moved this court to stay its resolution of the issues he presented in his COA application pending the Supreme Court's resolution of Williams v. Taylor, 119 S. Ct. 1355 (1999) (granting certiorari).  He concurrently filed a brief in support of his COA application, in which he raised issues concerning his Penry claim, argued that we should grant a COA to review the district court's decision to deny a COA sua sponte, and briefly asserted that the Williams decision might impact the district court's denial of a COA on all claims.

On April 18, 2000, the Supreme Court announced its decision in Williams, thereby mooting Cruz's motion to stay our proceedings.  On April 20, 2000, we requested that each side file a letter brief addressing the impact of Williams on this case.  In his letter brief, Cruz suggested in conclusory fashion that each of his claims should be re-reviewed in light of the Supreme Court's decision in Williams.  We now proceed to address Cruz's arguments surrounding his Penry claim, his argument that the district court erred in sua sponte denying him a COA, and his suggestion that all of his claims be re-reviewed in light of Williams.

7

## II. STANDARD OF REVIEW

Cruz wishes to appeal a claim that was denied by the district court. Because his petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is subject to that law's provisions. See Hill v. Johnson, 210 F.3d 481, 484 (5th Cir. 2000). Because he seeks to initiate an appeal after the effective date of AEDPA, "the right to appeal is governed by the certificate of appealability (COA) requirements now found at 28 U.S.C. § 2253(c)." Slack v. McDaniel, 120 S. Ct. 1595, 1600 (2000). To obtain a COA, a prisoner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make such a showing, a prisoner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack, 120 S. Ct. 1603-1604 (internal quotation marks omitted).

The determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lense of the deferential scheme laid out in 28 U.S.C. § 2254(d). See Hill v. Johnson, 210 F.3d 481, 484-85 (5th Cir. 2000). Under § 2254(d), when reviewing a claim adjudicated by a state court on the merits, we pay deference to the state court's decision regarding

8

that claim, unless the decision "[is] contrary to, or involve[s] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . [is] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) & (2).  A decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000).  A decision "involve[s] an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States" "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  Factual findings of the state court have a presumption of correctness, which presumption the petitioner can only rebut by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

### III.  PENRY CLAIM

9

In addressing Cruz's Penry claim, the district court examined evidence of Cruz's mental capacity, illiteracy, deprived childhood, and alcohol and drug abuse.  See District Court Opinion at 26-27.  Before this court, Cruz limits his arguments to evidence of his mental capacity.  We limit our discussion accordingly.

The district court began by setting forth what it considered the appropriate legal framework through which to review a Penry claim.  The district court determined that a defendant is only entitled to a Penry instruction if relevant mitigating evidence is beyond the effective reach of the jury in light of the state's capital sentencing structure.  See District Court Opinion at 44-45.  The district court stated that in order for evidence to be relevant mitigating evidence, it "must show (1) a uniquely severe, permanent handicap with which the defendant is burdened through no fault of his own, and (2) that the criminal act was attributable to this severe, permanent condition."[5]  Id.

The district court first concluded that the instruction provided by the state trial court did not meet the requirements of Penry.  See id. at 49-50.  It then concluded that the evidence of Penry's mental deficiency was not constitutionally relevant mitigating evidence because Cruz neither established through the evidence that he suffered from a uniquely severe permanent

---

[5] We refer to the second prong of this inquiry, as do the parties, as the "nexus requirement."

10

handicap nor that his criminal act was attributable to his mental deficiency.  See id. at 55; 58-59.  Ultimately, the district court concluded that "the Texas Court of Criminal Appeals' rejection of petitioner's Penry claims was [not] the product of . . . an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" and denied relief on Cruz's Penry claim.  Id. at 62.

In his brief before us, Cruz makes the following arguments: that the evidence in his case satisfies the nexus requirement; that the state trial court implicitly found that the nexus requirement had been met, and the federal courts should not disturb that conclusion; that the State waived the right to argue that the nexus requirement had not been met because it failed to object at trial or raise the issue on appeal in state court; and, finally, Cruz argues that the nexus requirement does not pose a adequate bar to relief.  Cruz presupposes that the granting of a COA in his case turns on our review of the district court's discussion and conclusion regarding the nexus requirement.  He consequently fails, at any point in either of his briefs before this court, to develop any argument regarding the state court disposition of this claim.[6]

_____

[6] We note that Cruz's application would fare no better even were we simply to review the district court's discussion of this claim.  In addition to concluding that the nexus requirement had not been met, the district court determined that the evidence did not establish that Cruz suffered from a uniquely severe permanent handicap.  See District Court Opinion at 55; 58-59.  Apart from

11

A COA can only be granted if "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack, 120 S. Ct. at 1604 (internal quotation marks omitted). Here, the Texas Court of Criminal Appeals explicitly addressed Cruz's Penry claim on direct appeal. This treatment by the Texas Court of Criminal Appeals constituted an adjudication on the merits for purposes of § 2254(d). See Hill, 201 F.3d at 485. Consequently, the district court was bound to deny the claim, as it did, unless the state court disposition was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). By failing to develop any argument that the state court disposition was infirm under the "contrary" or "unreasonable application" standard, as laid out in § 2254(d) and further defined in Williams, Cruz has not met his burden of demonstrating that reasonable jurists could debate whether the district court should have granted his petition on this claim or that the issue is adequate to deserve encouragement to proceed further. See Slack, 120 S. Ct. at 1604. He has therefore failed to make a substantial showing of the denial of a constitutional right.

---

flat assertions that he is retarded, Cruz fails to develop any argument that the latter determination was erroneous.

Although Cruz's brief incorrectly focuses on the district court's discussion of the nexus requirement rather than on the disposition of this claim by the Texas Court of Criminal Appeals, he does briefly state that his evidence of mental retardation entitled him to a <u>Penry</u> instruction. <u>See</u> Petitioner's Brief at 10. Even giving Cruz and his habeas counsel the benefit of the doubt by construing this statement as an argument that the decision of the Texas Court of Criminal Appeals was an unreasonable application of Supreme Court precedent, Cruz has failed to make a substantial showing of the denial of a constitutional right. Considering the evidentiary differences between Cruz's case and Penry's case, particularly the evidence relating to the extent of Penry's retardation and the evidence that he was unable to learn from his mistakes, <u>see</u> <u>Penry</u>, 492 U.S. at 308, we conclude that reasonable jurists could not debate whether the decision by the Texas Court of Criminal Appeals that Cruz was not entitled to a <u>Penry</u> instruction, <u>see</u> <u>supra</u> note 4, was an unreasonable application of Supreme Court precedent as defined in <u>Williams</u>.

## IV.  <u>SUA</u> <u>SPONTE</u> DENIAL OF A COA AND REQUEST FOR RE-REVIEW IN LIGHT OF <u>WILLIAMS</u>

In his final argument for a COA, Cruz asserts that by <u>sua sponte</u> denying him a COA, the district court denied him

"meaningful access to the courts and the representation of counsel." Petitioner's Brief at 32. We have previously addressed this same claim in Alexander v. Johnson, 211 F.3d 895 (5th Cir. 2000), and found it to be without merit. See id. at 898 ("It is perfectly lawful for district court's [sic] to deny COA sua sponte.").

Cruz also states in that same section of his brief that:

the court below applied an inappropriate legal standard for a certificate of appealability under the law as it currently stands. Even more importantly, in light of the district court's standards and the pending Williams case, . . . this Court can not at all be confident that a certificate of appealability should be denied on any issue, let alone on all issues.

Id. Cruz's first unsubstantiated averment, that the district court applied the inappropriate legal standard for a COA, is without merit. The district court applied the correct standard for granting a COA. In the process of applying that standard, however, it concluded that "the vast majority of petitioner's claims for relief herein are not only foreclosed under the highly deferential standard of review mandated by the AEDPA but wholly frivolous when examined de novo." District Court Opinion at 175. Earlier in its opinion, it relied on the standard we announced in Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), in determining whether, under AEDPA, a state court's decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court. The Drinkard standard was abrogated by the Supreme Court in Williams. See 120

14

S. Ct. at 1522.  Of course, the <u>Williams</u> opinion had not been announced at the time Cruz filed his brief.

Considering the Supreme Court's abrogation of the <u>Drinkard</u> standard, and considering Cruz's additional averment that <u>Williams</u> might impact his case, we requested that Cruz file a letter brief discussing the impact of <u>Williams</u> on his case.  His letter brief was devoted almost exclusively to discussing the <u>Williams</u> opinion and arguing its purported impact on the nexus requirement.  His only reference to any other claims was an assertion, raised for the first time at the end of his letter brief, that, "in light of the <u>Williams</u> case discussed above, this Court should also consider the necessarily [sic] application by the Court below of the wrong standard for granting a [COA] to all claims.  Because the standard for appealability was judged on the now-discredited <u>Drinkard</u> standard, the entire review of the court below must be subject to re-review."  Petitioner's Letter Brief at 8-9.  Whether Cruz is suggesting that we re-review every claim or remand the case to the district court to re-review every claim is unclear.  In either case, he never develops any argument that re-review would result in a different outcome on any specific claim.  His conclusory assertions regarding the impact of <u>Williams</u> on his entire case are not adequately briefed, and we therefore consider his request for re-review in light of <u>Williams</u> waived.  <u>See</u> <u>Rutherford v. Harris County</u>, 197 F.3d 173, 193 (5th Cir. 1999) ("[W]e will not consider an issue that is inadequately

15

briefed . . . ."); <u>Justiss Oil Co., Inc. v. Kerr-McGee Refining Corp.</u>, 75 F.3d 1057, 1067 (5th Cir. 1996) (same).

## VI.  CONCLUSION

For the foregoing reasons, we DENY Cruz's application for a COA.  His motion to stay proceedings to await the <u>Williams</u> case is DISMISSED as moot.  His motion filed July 18, 2000 to stay his execution is DENIED.

16