**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 01-10763

———————

JAVIER SUAREZ MEDINA,

Petitioner - Appellant,

versus

JANIE COCKRELL, Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent - Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:98-CV-2511-D

January 16, 2002

Before SMITH, EMILIO M. GARZA, and PARKER, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:[*]

Petitioner-Appellant Javier Suarez Medina, a Texas prisoner, was convicted of capital murder

and sentenced to death. Medina sought collateral review of his sentence, filing a 28 U.S.C. § 2254[1]

[*]    Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

[1] 28 U.S.C. § 2254 provides, in relevant part:
      (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall

-1-

petition for a writ of habeas corpus in the United States District Court for the Northern District of Texas. The district court denied his petition for habeas corpus and then denied his application for a Certificate of Appealability ("COA"). Pursuant to the requirements of 28 U.S.C. § 2253(c),[2] Medina now requests that we grant him a COA so that he may appeal the district court's denial of his habeas petition. We hold that Medina has failed to make a substantial showing of the denial of a constitutional right and therefore deny his request for a COA.

Medina was convicted by a jury for the murder of undercover police officer Lawrence Cadena during the course of a drug sale and robbery.[3] During the penalty phase of the trial, the state sought to introduce the testimony of Michael Mesley regarding an unadjudicated extraneous offense. Mesley, who had recently identified Medina from his picture on television, claimed that Medina had robbed and shot him and his wife two years earlier. The trial court, after conducting a preliminary hearing outside of the presence of the jury, over the objections of Medina's attorneys, admitted the evidence as probative of whether Medina constituted a continuing threat to society. *See* TEX. CODE

---

entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254.

[2] 28 U.S.C. § 2253(c) provides, in relevant part:
> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> > (B) the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c).

[3] The Texas Court of Criminal Appeals provides a full description of the background facts of Medina's case. *See Medina v. State*, No. 70,892 (Tex. Crim. App. May 5, 1993) (en banc).

CRIM. P. art. 37.071(b)(2) (Vernon 1981).[4] Mesley testified and was subject to cross-examination. In addition, Medina's attorneys called several witnesses in order to establish an alibi for the unadjudicated robbery offense. Based in part on Mesley's testimony, the jury sentenced Medina to death.

Medina now seeks permission to appeal the district court's denial of his § 2254 habeas petition. In order to grant a COA, we require that Medina must make a "substantial showing of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). A "substantial showing" requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further." *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). "Any doubts as to whether a COA should issue must be resolved in [Medina's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). Moreover, the severity of Medina's prescribed penalty also colors our consideration of whether he has met his "substantial showing" burden. *Hill v. Johnson*, 210 F.3d 481, 484 (5th Cir. 2000). Thus, because this case involves the death penalty, we should be especially careful in our analysis of Medina's claims. *Hernandez*, 210 F.3d at 484.

---

[4] Texas procedure in a capital case involves submitting three special questions to the jury. The three questions are whether the defendant (1) committed the offense deliberately; (2) whether the defendant would constitute a continuing threat to society; and (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any of the deceased. TEX. CODE CRIM. P. art. 37.071(b) (Vernon 1981). The state must prove each issue submitted to the jury beyond a reasonable doubt. TEX. CODE CRIM. P. art. 37.071(c) (Vernon 1981). If the jury returns an affirmative finding on each issue, the court must sentence the defendant to death. Otherwise, the court imposes a life sentence. TEX. CODE CRIM. P. art. 37.071(d) (Vernon 1981).

In addition, when assessing whether Medina is entitled to a COA, "we must keep in mind the deference scheme laid out in 28 U.S.C. § 2254(d)." *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000), *cert. denied,* 121 S. Ct. 1420 (2001). Pure questions of law and mixed questions of law and fact raised in habeas petitions are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Under the standard in § 2254(d)(1), federal courts can only issue a writ if the decision of the state court was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision constitutes an unreasonable application of Federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

In this petition for a COA, Medina alleges two constitutional infirmities with the state court proceedings. First, he claims that the prosecution violated his Fifth and Fourteenth Amendment rights by failing to disclose material, exculpatory evidence during the penalty phase of the trial. Specifically, Medina argues that the prosecution withheld the 911 call sheet from the evening of his alleged shooting of Mesley. Medina contends that if the prosecution had disclosed to him that they had this sheet, the jury likely would not have sentenced him to death. Second, Medina challenges the introduction of Mesley's testimony, claiming that it was materially false and unreliable. Thus, its

admission was contrary to both the Texas evidentiary rules and clearly established Supreme Court precedent.

The first issue presented in Medina's application for a COA is whether the prosecution improperly withheld material, exculpatory evidence. Prosecutors have a duty to disclose evidence that is (1) favorable to the accused; and (2) material to the proceedings. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Favorable evidence is evidence that, "if disclosed and used effectively,. . . may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* Failure to turn over such evidence to the defense violates the defendant's due process rights. *Id.*

Whether documents must be produced and whether they are material under *Brady* is a mixed question of law and fact. *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir.), *cert. denied*, 527 U.S. 1056 (1999). The state habeas court properly concluded that *Brady* provided the appropriate legal standard for analyzing this claim. Thus, the district court could have issued a writ of habeas corpus only if the Texas state court unreasonably applied *Brady* to the facts. *See* 28 U.S.C. § 2254(d)(1). In turn, we can grant a COA only if reasonable jurists could objectively disagree with regard to whether the state trial court so erred in its application of standard articulated in *Brady*. *See Moore*, 225 F.3d at 502.

The prosecution failed to disclose the 911 call sheet. Thus, the sole inquiry is whether the state court erred in concluding that the call sheet was either not favorable to the defense or material to the proceedings. The specific facts of Mesley's shooting are important to this issue. Mesley

-5-

claimed that Medina shot him at around 8:40 p.m. The 911 call sheet then established that he placed a call to an emergency services operator at 8:56 p.m and again at 9:22 p.m. Medina's alibi was that he was at work at a nearby Burger King until 10:53 p.m. Medina argues that the prosecution theorized that Medina left work at around 8:30 p.m. and had a co-worker clock him out at 10:53 p.m. Thus, according to Medina, the information in the 911 call sheet made it improbable, if not impossible, that Medina robbed Mesley because it established that there was insufficient time for Medina to leave work, travel to the crime scene, and then commit the offense.

Medina's contention, however, is incorrect. Medina's arguments focus on the fact that the call sheet provided material, exculpatory evidence that he would not have had time to leave work at 8:30 p.m. and then commit the alleged robbery a few minutes later. The prosecution, however, never presented any evidence that Medina did in fact leave work at 8:30 p.m. The prosecution's questions only undermined Medina's alibi that he was physically present at work by attempting to establish that a co-worker could clock in or out for another employee. Therefore, if the defense had presented the call sheet during this questioning, it would not have made a difference between a life sentence and a death sentence because it was not relevant to what the prosecution was attempting to establish: Medina's presence or absence at work at the time of the Mesley incident.

Even assuming the prosecution did assert that Medina left work at 8:30 p.m., it is not clear the 911 call sheet is favorable to the defense. Mesley testified that the robbery took place at 8:50 p.m. According to the 911 sheet, Mesley placed the first call to emergency services at 8:56 p.m. Thus, the call sheet appears to support his chronology of the events. Moreover, it arguably permitted even more time for Medina to leave work and travel to the crime scene than in Mesley's original testimony. Given the nature of the undisclosed evidence, the state court did not unreasonably apply

*Brady* to the facts by concluding that the call sheet was not favorable to the defense or material to the proceedings.

The second issue presented in Medina's application for a COA is whether he was denied a fair trial because the State utilized and relied upon allegedly inaccurate evidence in violation of the Eighth Amendment's prohibition of cruel and unusual punishment as well as the Due Process Clause.

In order to state a claim that the prosecution utilized and relied upon inaccurate witness testimony in the sentencing phase of capital murder trial, a defendant must establish that the evidence was both false and material. *Hernandez*, 213 F.3d at 243. The state habeas court concluded that Medina had failed to prove either of these elements. We review the state court's conclusion as to the admissibility of Mesley's testimony solely to determine whether it was contrary to clearly established Federal law, as determined by the Supreme Court, or whether it was an unreasonable application of that precedent. *See* 28 U.S.C. § 2254(d)(1).

Medina first contends that Mesley's testimony was inadmissible under the Texas Code of Criminal Procedure. According to Medina, the trial court's violation of state evidentiary rules resulted in a denial of his due process rights because it rendered the result of the trial fundamentally unfair. *Herrera v. Collins*, 904 F.2d 944, 949 (5th Cir. 1990); *Spencer v. Texas*, 385 U.S. 554, 561 (1967) (The Due Process Clause guarantees the fundamental elements of fairness in a criminal trial.). Texas law is clear that unadjudicated extraneous offenses are generally admissible at the penalty phase of a capital murder trial. *See* TEX. CODE CRIM. P. art. 37.071; *Clark v. Collins*, 19 F.3d 959 (5th Cir. 1994). For such evidence to be admissible, the state need only establish that the evidence is relevant and that the accused actually participated in the extraneous offense. *See, e.g., Burks v. State*, 876 S.W.2d 877, 909 (Tex. Crim. App. 1994). The trial court held an evidentiary hearing and concluded

that the evidence was relevant to the issue of Medina's future dangerousness. In addition, the testimony itself established that Medina participated in the extraneous offense. Given these facts, the state court concluded that the evidence was properly admissible under the Texas Code of Criminal Procedure.

In his current § 2254 petition, Medina has not presented any evidence that the state court unreasonably reached its conclusion as to the admissibility of Mesley's testimony. Medina argues that Mesley's testimony was unreliable because the identification occurred two years after the event, the circumstances of the robbery made identification difficult, and Mesley's identification was not independently corroborated. These arguments, however, do not address the issue of whether Mesley's testimony was false. Instead, they concern the weight the jury should have accorded the evidence. Medina's attorneys had the opportunity to inform the jury of these facts on cross-examination and they actively sought to undermine Mesley's account. Medina has thus failed to make a substantial showing of the denial of a constitutional right based on the admission of Mesley's testimony under the Texas evidentiary rules.

In addition, Medina claims that the state habeas court violated his constitutional rights because its decision was contrary to the Supreme Court's holding in *Johnson v. Mississippi*, 486 U.S. 578 (1986). Specifically, Medina contends that *Johnson* establishes a heightened requirement of reliability for evidence of prior offenses or conduct in a capital trial. He argues that both the state and district court misapplied *Johnson* by admitting Mesley's inaccurate and inadmissible testimony under this heightened evidentiary standard.

In *Johnson*, the prosecution sought to introduce evidence during the penalty phase of a capital trial that the defendant had previously been convicted of a felony involving the use or threat of

violence. *Johnson*, 486 U.S. at 581. The sole evidence presented by the prosecution consisted of an authenticated copy of the defendant's commitment to a prison in New York following his conviction for the alleged offense. *Id.* Subsequently, the New York conviction was vacated after the defendant was sentenced to death. The Court held that reliance on the vacated conviction to support the death sentence violated the defendant's Eighth Amendment rights. In reaching its conclusion, the Supreme Court carefully distinguished between facts establishing the conviction and evidence relating to the underlying offense. The Court stated: "The possible relevance of the conduct which gave rise to the assault charge is of no significance here because the jury was not presented with any evidence describing that conduct -- the document presented to the jury proved only the facts of conviction and confinement, nothing more." *Id.* at 586. Thus, *Johnson* focused on whether the conviction itself was relevant to the sentencing decision. It did not address the propriety of admitting testimony of the specific conduct of the defendant.

Confronted with facts similar to this case, we have concluded that *Johnson* is inapplicable when the victim of an extraneous offense testifies during the penalty phase of a capital trial. *See Gibbs v. Johnson*, 154 F.3d 253, 258 (5th Cir. 1998). In *Gibbs*, we stated: "In *Johnson* the invalidated conviction was the sole evidence of the prior conduct. The court in *Johnson* emphasized that because the prosecutor relied upon a judgment of conviction to prove the prior acts, the reversal took away the prosecutor's evidence. The evidence of Gibbs's prior acts was the testimony at trial of the victim." *Id.* Based on the distinction we drew in *Gibbs*, the district court correctly denied relief because Medina failed to prove that the state habeas court arrived at a conclusion different from that of the Supreme Court on a materially indistinguishable set of facts.

Following our reasoning in *Gibbs*, the district court found that the facts of Medina's case

were materially distinguishable from those in *Johnson*. Unlike in *Johnson*, the jury did not sentence Medina to death based on a vacated conviction. Instead, the jury heard testimony from one of the victims of the prior offense, who identified Medina as the perpetrator. Medina's attorneys cross-examined Mesley and presented evidence that Medina was at work at the time of the alleged robbery. From this evidence, the jury was able to assess Mesley's credibility, permitting them to assign the appropriate weight to his testimony in reaching their sentencing decision. Based on this material distinction, the state court's decision was not contrary to the Supreme Court's decision in *Johnson*.

Lastly, Medina claims that the state court's determination that Mesley's testimony was admissible was contrary to clearly established federal law as determined by the Supreme Court in *United States v. Tucker*, 404 U.S. 443 (1972). In *Tucker*, the district court relied on several previous felony convictions in sentencing a defendant to the maximum prison term for armed robbery. Several years after the district court handed down its sentence, the defendant's prior convictions were invalidated because the defendant was denied his right to counsel. The Court remanded the case for resentencing because the original sentence was "founded at least in part upon misinformation of constitutional magnitude." *Id.* at 447.

Medina's arguments are again incorrect. Unlike in *Tucker*, the jury did not sentence Medina based on an unconstitutional prior conviction. Instead, the jury heard testimony from Mesley about the factual circumstances underlying the extraneous offense. Thus, the present case is materially distinguishable from the situation in *Tucker*. Medina again has failed to demonstrate that the state court's determination was contrary to clearly established federal law.

Because Medina has failed to make a substantial showing of the denial of a constitutional right with regard to either of his arguments, his application for a COA is DENIED.

-10-