Kenneth Alan CROSS, Petitioner,

v.

Gary L. JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.

No. 4:99–CV–972–Y.

United States District Court,
N.D. Texas,
Fort Worth Division.

April 6, 2001.

clusions, and recommendation, as of the date of this order, no written objections have been filed. This Court finds that the petition for writ of habeas corpus should be denied for the reasons stated in the magistrate judge's findings and conclusions.

It is therefore ORDERED that the findings, conclusions and recommendation of the magistrate judge should be, and are hereby, ADOPTED.

It is further ORDERED that Petitioner's Petition for Writ of Habeas Corpus be, and is hereby, DENIED.

It is further ORDERED that the clerk of the Court shall transmit a copy of this order to all parties by certified mail, return receipt requested.

Kenneth Alan Cross, Midland, TX, Pro se.

Denise A. Villarreal, Attorney General of Texas, Habeas Corpus Division, Austin, TX, for Defendant.

*ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND CONCLUSIONS (With Special Instructions to the Clerk of Court)*

MEANS, District Judge.

The Court has made an independent review of the following matters in the above-styled and numbered cause:

1. The pleadings and record;

2. The proposed findings, conclusions, and recommendation of the United States Magistrate Judge filed on March 7, 2001.

Although the magistrate judge, pursuant to a notice and order of March 7, 2001, gave the parties until March 28, 2001 to file written objections to his findings, con-

*FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER*

BLEIL, United States Magistrate Judge.

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendations of the United States Magistrate Judge are as follows:

*FINDINGS AND CONCLUSIONS*

**A. NATURE OF THE CASE**

This is a petition for writ of habeas corpus by a state prisoner pursuant to Title 28 of the United States Code, Sections 2254.

## B. PARTIES

Petitioner Kenneth Alan Cross, TDCJ–ID # 843086, was confined at the Neal Unit of the Texas Department of Criminal Justice, Institutional Division in Amarillo, Texas at the time he filed this petition.[1]

Respondent Gary L. Johnson is the Director of the Texas Department of Criminal Justice, Institutional Division.

## C. PROCEDURAL HISTORY

On December 20, 1995, a Palo Pinto County Grand Jury in Cause No. 10438 charged Cross by indictment with the offense of manslaughter. *Ex Parte Cross*, No. 41,764–01 at 64. The indictment further charged Cross with using or exhibiting a deadly weapon during the commission of the offense, and the indictment also contained an enhancement paragraph. *Id.* Cross entered a plea of not guilty to the crime charged. On April 12, 1996, after trial before a jury, Cross was found guilty of the lesser offense of criminally negligent homicide. *Id.* at 134. The jury further found that Cross used a deadly weapon during the commission of the offense, and found the enhancement paragraph to be true. *Id.* On the same date, the jury assessed punishment at an enhanced term of confinement of thirteen years and a fine of $1,000, and the trial court entered judgment against him. *Id.* at 134–35.

Cross prosecuted a direct appeal from his conviction, raising the following grounds for relief: (1) the trial court erred in denying his motion to quash the indictment because it failed to sufficiently describe the act that constituted reckless conduct as required by TEX. CODE CRIM. PROC. art. 21.15; (2) the trial court erred when it denied his motion to dismiss for denial of due process due to a four week delay of his trial; (3) the trial court erred when it denied his motion for disqualification of the trial judge; (4) the trial court erred in allowing the state to impeach its own witness; (5) the trial court deprived him of a fair trial by commenting on the absence of a witness; and (6) the trial court erred in admitting inflammatory and prejudicial photographs of the deceased. On February 26, 1998, the appellate court affirmed Cross' conviction in an unpublished written opinion. *Cross v. State*, No. 11–96–120–CR (Tex.App. – Eastland 1998, pet. ref'd). Cross' *pro se* petition for discretionary review was refused by the Texas Court of Criminal Appeals on July 8, 1998. *Cross v. State*, No. 936–98 (Tex.Crim.App. July 8, 1998).

Cross then pursued post-conviction relief, filing two state applications for writ of habeas corpus, challenging his conviction for criminally negligent homicide. *See Ex Parte Cross*, No. 41, 764–01, –02. In his first application filed on February 3, 1999, Cross raised the following claims: (1) there is no proof of record that the grand jury proceedings were properly conducted; (2) the evidence admitted at trial against him for the purposes of impeachment was never properly verified by an expert witness; (3) he received ineffective assistance of trial counsel, (4) the trial court failed to properly charge the jury regarding accomplice witnesses; (5) the real issue before the court was who was the true individual responsible for the accidental killing, and this issue was never raised at trial or on appeal; and (6) he was denied his right to be present during all stages of the criminal proceedings in that he was not present when the jury was temporarily excused due to the prosecutor's illness during the

---

**1.** Cross notified this Court on March 2, 2001, that he is currently confined at the Midland County Detention Center in Midland, Texas.

trial. *Ex Parte Cross*, No. 41,764–01 at 1–63. On May 19, 1999, the trial court reviewed the claims presented, finding them meritless. *Id.* at 145–49. The Texas Court of Criminal Appeals on July 28, 1999, denied the application without written order on the findings of the trial court. *Id.* at Cover.

Cross filed his second state application on September 23, 1999, raising the following grounds for relief: (1) the trial court's charge to the jury was so misleading and erroneous, especially regarding the issues of the sentencing guidelines and deadly weapon finding, that it denied him a fair and impartial trial; (2) the trial court improperly failed to instruct the jury on the law of the parties or criminal responsibility of a co-conspirator with regard to the subject offense; (3) the trial court's instruction to the jury regarding parole law was improper; (4) the trial court improperly failed to instruct the jury that state witness Banks had been paid by the state and had agreed to testify as a state witness in exchange for not being charged in the instant case; and (5) the jury panel was improper because it failed to include any minorities. *Ex Parte Cross*, No. 41,764–02 at 24. The second application was dismissed as successive pursuant to Texas Code of Criminal Procedure Article 11.07, Section 4. *Id.* at Cover. Cross then filed this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court.[2] In response to an order to show cause, the respondent has filed an Answer, supported by a brief. The Petitioner has filed a reply with attached documentary exhibits.

### D. RULE 5 STATEMENT

Respondent asserts that Petitioner has failed to exhaust his state remedies as to certain issues presented in this federal petition. The Respondent, however, does not move for dismissal on this ground, instead asserting that the unexhausted claims are precluded from consideration by this Court because they are procedurally barred.

### E. ISSUES

Petitioner raises the following claims:[3]

2. Cross has filed two other petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. Before the filing of the instant petition, Cross filed his first petition, assigned Case No. 4:99–CV–0656–Y, challenging his May 30, 1996, conviction entered in the 29th Judicial District Court of Palo Pinto County for execution of a document by deception. The petition was dismissed without prejudice, except as to any application of the federal statute of limitations or other federal procedural bar which may apply, for lack of exhaustion of state remedies. *Cross v. Johnson*, No. 4:99–CV–0656–Y (N.D.Tex. April 24, 2000). After the filing of the subject petition, Cross filed his third petition, assigned Case No. 4:00–CV–0515–Y, raising the identical claims presented in his first federal petition. In response to an order to show cause, the respondent filed a Motion to Dismiss as Time Barred Pursuant to 28 U.S.C. § 2244(d). On February 20, 2001, the undersigned entered his Findings, Conclusions, and Recommenda-

tion, recommending that the petition be dismissed with prejudice as time barred. The case currently remains pending before the Court.

3. The fourteen grounds for relief were listed in Cross' petition. (Docket Entry # 1). In his Answer, Respondent argues that ground fourteen and one subclaim of ineffective assistance of trial counsel (i.e., counsel rendered ineffective assistance for failing to object to proceeding before the trial judge that Cross attempted to disqualify) are unexhausted and thereby prospectively procedurally barred from federal habeas corpus review. In response thereto, Cross filed a pleading, requesting this Court to dismiss the unexhausted claims and proceed only on the exhausted grounds presented. (Docket Entry # 22). By separate order entered by the undersigned on this date, Cross' motion has been granted and the two claims have been deleted from the

1. There is no proof of record that the grand jury proceedings were properly conducted.

2. The trial court erred in denying his motion to quash the indictment, because the indictment failed to describe the act or acts constituting reckless conduct.

3. The jury panel was improper because it failed to include any minorities.

4. The trial court erred when it denied his motion to dismiss for denial of due process due to a four week delay of his trial.

5. The trial court erred when it denied his motion for disqualification of the trial judge.

6. He received ineffective assistance of trial counsel.

7. The evidence admitted at trial against him for the purposes of impeachment was never properly verified by an expert witness.

8. The trial court improperly permitted the state, over defense objection, to impeach its own witness with a prior written statement.

9. He was denied his right to be present during all stages of the criminal proceedings in that he was not present when the jury was temporarily excused due to the prosecutor's illness during the trial.

10. The trial court's comments regarding the absence of a defense witness were so prejudicial that he was deprived of a fair and impartial trial.

11. The trial court erred in admitting inflammatory and prejudicial photographs of the deceased.

12. The real issue before the court was who was the true individual responsible for the accidental killing, and this issue was never raised at trial or on appeal.

13. The trial court failed to properly charge the jury regarding accomplice witnesses and the law of the parties or criminal responsibility of a co-conspirator with regard to the subject offense, and erroneously instructed the jury on the parole laws.

14. The state failed to properly respond to his motion requesting the

petition, having been waived by the petitioner. Cross has also filed a form Amended Habeas Corpus Petition, apparently attempting to include two additional grounds for relief. (Docket Entry # 8). Notwithstanding the fact that the petitioner has not properly sought leave to file the amended petition, amendment is not appropriate in that thorough review of the record reveals that the two claims sought to be included have not been properly exhausted before the state courts and are therefore also prospectively procedurally barred from federal habeas corpus review. If a petitioner failed to exhaust his state court remedies, and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for the purposes of federal habeas review.

*Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In Texas, except under certain specified exceptions, a subsequent application for writ of habeas corpus filed after final disposition of an initial application challenging the same conviction may not be considered on the merits or relief granted based upon the subsequent application. TEX. CODE CRIM. PROC. ANN. art. 11.07 Sec. 4 Just like his second application, if Cross returns to state court at this stage of the proceedings any third state habeas corpus application would result in dismissal for abuse of the writ. For this reason, the newly added unexhausted claims would be prospectively procedurally barred and would not be given consideration on federal habeas corpus review. *See Nobles*, 127 F.3d at 419–24. Leave to amend has, therefore, been denied.

state to indicate whether it intended to offer extraneous evidence at trial, and the admission of such evidence was improper.

## F. THRESHOLD ISSUE—PROCEDURAL BAR

■ Respondent asserts that eight of the fourteen claims, a portion of another claim, and one subclaim of ineffective assistance of counsel presented by Cross are procedurally barred from federal habeas corpus review. Thus, the initial issue to be resolved is whether any of the claims presented in this federal habeas corpus petition have been procedurally barred by the state courts and thereby precluded from federal habeas corpus review. When a state court has applied a state procedural bar to a claim, that claim is likewise barred from federal habeas corpus review, unless the petitioner can demonstrate objective cause for the failure to properly raise the claim and actual prejudice resulting from the error complained of, or by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Murray v.*

*Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[4]

## 1. CLAIMS TWO, EIGHT AND TEN

■ Respondent correctly argues that grounds two, eight, nine, ten and twelve are subject to an express procedural bar, precluding federal habeas review. Claims two, eight and ten of this federal petition were presented on direct appeal. With regard to claim two, the appellate court held that the motion to quash the indictment had not been timely filed pursuant to TEX. CODE CRIM. PROC. art. 28.01 and therefore any objection had been waived.[5] *Cross v. State*, No. 11–96–120–CR, slip op. at 1–2. (citations omitted). As to claim eight, the appellate court held that the issue had not been properly preserved for review, because Cross had not objected when the prosecutor read the impeaching portions of the witness' statement into the record.[6] *Id.* at 3. As to claim ten, the appellate court held that Cross did not object to the alleged offending comments made by the trial court, and therefore he had not preserved the issue for review.[7] *Id.* at 4. Cross' petition for discretionary review was refused by the Texas Court of

---

**4.** The *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) rule provides that a claim to which the state courts have applied a state procedural bar is likewise barred from federal habeas corpus consideration, absent a showing of cause for and actual prejudice resulting from the default. A state procedural default bars consideration of an issue on federal habeas review when the last state court rendering a judgment on the issue in question "clearly and expressly" states that its judgment rests on a procedural bar, *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); or there is a clear and unambiguous application of a bar by the trial court, followed by a per curiam affirmance on appeal. *Ylst v. Nunne-*

*maker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

**5.** *See Hendricks v. State*, 727 S.W.2d 816 (Tex. App.—Fort Worth 1987, no pet.)(holding that motion to quash indictment was untimely in that it had not been filed seven days before pretrial hearing, and therefore any objection to indictment was waived).

**6.** *See Sharp v. Johnson*, 107 F.3d 282, 285–86 (5th Cir.1997)(Texas contemporaneous objection rule constitutes an independent and adequate state ground upon which to base a procedural bar to federal review).

**7.** *See Sharp v. Johnson*, 107 F.3d at 285–86.

Criminal Appeals. *Cross v. State*, No. 936–98 (Tex.Crim.App. July 8, 1998). The appellate court's rulings clearly and expressly rested upon a state procedural bar.[8]

■■ Since claims two, eight and ten of this federal petition were barred from consideration by the state courts, this Court must deem them procedurally barred as well unless Cross can demonstrate objective cause for the failure to properly raise the claims and actual prejudice resulting from the errors complained of, or by demonstrating that the court's failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. at 722, 111 S.Ct. 2546. *See Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. 2639. The existence of "cause" ordinarily turns on some objective factor external to the petitioner. It appears that Cross is attempting to establish the cause element by alleging that he received ineffective assistance of trial counsel because his lawyer failed to timely challenge the indictment, properly object to the state's impeachment of its own witness, and object to the allegedly prejudicial comments uttered by the court. (Petition at additional attached pages 1–2). An attorney's deficient performance may satisfy the first prong of the cause and prejudice standard. *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. 2678. The underlying substantive claims and/or any ineffective assistance of counsel claim presented by the petitioner

are meritless. Therefore, the petitioner has been unable to demonstrate actual prejudice, the second prong, to overcome the procedural default. Claims two, eight and ten are therefore barred from federal habeas corpus review, although they will effectively be reviewed on the merits to demonstrate lack of actual prejudice.

### 2. CLAIMS SEVEN, NINE AND TWELVE

■ Issues seven, nine and twelve were not presented on direct appeal, but the identical claims were raised by Cross in his first state application for writ of habeas corpus. *See Ex Parte Cross*, No. 41,764–01 at 48–50, 51–5. The trial court held that with regard to the claim that Cross was denied his right to be present at the time the jury was sent home due to the unexpected illness of the prosecutor (claim nine), there was no proper objection lodged to his alleged absence. *Id.* As to claims seven and twelve, the trial court on state habeas corpus relief construed the issues as attacks on the sufficiency of the evidence, and held that an insufficiency claim is not cognizable by collateral attack but is to be presented on direct appeal.[9] *Id.* at 148. The Texas Court of Criminal Appeals denied the state application without written order on the findings of the trial court. *Id.* at Cover. The Texas Court of Criminal Appeals' ruling clearly and expressly rested upon state procedural

---

8. The state appellate court in its opinion also found claims two, eight and ten meritless as well as procedurally barred. *Cross v. State*, No. 11–96–120–CR, slip op. at 1–2, 3, 3–4. Although the state court has ruled in the alternative, reaching both an independent state procedural bar and the merits of the constitutional claims, the federal court is bound by the procedural bar and will not reach the merits of the claims. *Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

9. Under Texas law, a defendant cannot challenge the sufficiency of the evidence in an application for writ of habeas corpus. *Ex Parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim.App.1994). The Fifth Circuit Court of Appeals has recognized this state procedural bar. *See West v. Johnson*, 92 F.3d 1385, 1398 n. 18 (5th Cir.1996), *cert. denied*, 520 U.S. 1242, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997).

bars, and Cross cannot obtain federal habeas relief on the basis of these claims unless he can demonstrate objective cause for the failure to properly raise the claims and actual prejudice resulting from the errors complained of, or by demonstrating that the court's failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. at 722, 111 S.Ct. 2546. *See Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. 2639. As to claim nine, Cross again attempts to establish the cause element by alleging that he received ineffective assistance of trial counsel because his lawyer failed to challenge his absence when the jury was excused. The record reveals that the underlying substantive claim and/or any ineffective assistance of counsel claim presented by the petitioner are meritless. Therefore, the petitioner has been unable to demonstrate actual prejudice, the second prong, to overcome the procedural default. Claims seven, nine and twelve are therefore barred from federal habeas corpus review, although claim nine will effectively be reviewed on the merits to demonstrate lack of actual prejudice.

### 3. CLAIM THREE AND PART OF CLAIM THIRTEEN

■ Cross raised claim three and the claim that the trial court erroneously instructed the jury on the parole laws (claim thirteen) for the first time in his second state application for writ of habeas corpus. *Ex Parte Cross,* No. 41,764–02 at 3, 7, 21–22. The Texas Court of Criminal Appeals dismissed Cross' second state application for abuse of writ. *Id.* at Cover. *See generally* TEX.CODE CRIM. PROC. ANN. art. 11.07 § 4. As indicated above, where a state court has explicitly relied on a procedural

bar, a state prisoner may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice that is attributable to the default. *Wainwright v. Sykes,* 433 U.S. at 87–88, 97 S.Ct. 2497 An abuse of the writ qualifies as a procedural default. *See Nobles,* 127 F.3d at 423; *Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir.), *cert. denied,* 515 U.S. 1153, 115 S.Ct. 2603, 132 L.Ed.2d 847 (1995). Thus, claim three and a portion of claim thirteen are explicitly barred from federal habeas corpus review.[10] *See Nobles,* 127 F.3d at 423; *Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir.), *cert. denied,* 515 U.S. 1153, 115 S.Ct. 2603, 132 L.Ed.2d 847 (1995).

### G. STANDARD OF REVIEW

■ This habeas corpus proceeding is controlled by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). The AEDPA's compelled deference to decisions of state courts is now familiar. Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if

---

**10.** Cross does raise claim three as a sub-claim of ineffective assistance of trial counsel (i.e., he received ineffective assistance of trial counsel, because his lawyer failed to challenge the jury panel in that it did not include any minorities), and the claim will be discussed in that context.

the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 411–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *See also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.2000). An "unreasonable application" of clearly established federal law is one in which the state court language identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389; *Hill v. Johnson*, 210 F.3d at 485. The Act further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant now has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*

## H. EXAMINATION OF THE ISSUES

### 1. GRAND JURY PROCEEDINGS

██ Cross alleges in ground one that there is no proof of record that grand jury proceedings were properly conducted in his case in that there only exists a signed indictment. This claim is meritless. The identical claim was presented by Cross in his first state application for writ of habeas corpus, and the Texas courts found that "the grand jury was impaneled and instructed as required by law." *Ex Parte Cross*, No. 41,764–01 at 145. Review of the record indicates that grand jury proceedings were in fact conducted, and the proceedings culminated in an indictment executed by the foreman of the grand jury, Charles F. Manley, and filed with the trial court on December 20, 1995. (Tr. 1–2). In this federal habeas corpus proceeding,

Cross merely asserts unsupported conclusory allegations of improper grand jury proceedings. Accordingly, Cross has not established that he is entitled to relief on this claim. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992)(a petitioner is not entitled to habeas corpus relief when his claims are merely conclusory allegations unsupported by specifics or in the face of the record are wholly incredible). *See also United States v. Ammirato*, 670 F.2d 552 (5th Cir.1982); *United States v. Sanderson*, 595 F.2d 1021 (5th Cir.1979).

### 2. IMPROPER DENIAL OF MOTION TO DISMISS

██ Cross alleges that the trial court erred when it denied his motion to dismiss in which he asserted a due process violation based upon a four week delay of his trial and the effect of the delay on the jury. The record reveals that trial proceedings commenced on March 11, 1996. In the evening after the first day of trial had concluded, the prosecutor became ill, eventually needing heart bypass surgery. (III S.F. 243). Due to the difficulty in obtaining a substitute prosecutor, trial proceedings were delayed until April 9, 1996. *Id.* at 238–39. On March 26, 1996, Cross filed a motion to dismiss, seeking dismissal of the criminal proceedings on the ground that the delay in the trial resulted in prejudice to Cross. (Tr. 51–2). On April 9, 1996, before trial proceedings recommenced, the trial court heard and denied Cross' motion to dismiss. (III S.F. 238–40). Upon requests from both Cross and the state, immediately before trial proceedings resumed, the trial court advised the jury of the reason for the delay and inquired of the jurors whether they had received any information regarding the case from outside sources and whether

they had had any discussions regarding the case during the recess. *Id.* 241–42, 243–44. When there was no response from the jury, trial proceedings recommenced with the state calling its next witness. *Id.* at 245.

■ The identical issue was presented on direct appeal, with the appellate court finding that the trial court had cause to continue the trial, the delay was not unnecessarily long, and there was nothing in the record indicating that Cross had been prejudiced by the delay or that the jury had been subjected to any outside influences. *Cross v. State,* slip op. at 2. Review of the record reveals that these findings are clearly supported by the record. The above-quoted finding is entitled to such a presumption of correctness.[11] Moreover, federal habeas corpus will not lie unless an error was so gross or a trial so fundamentally unfair that the petitioner's constitutional rights were violated. When looking at the totality of the circumstances surrounding the alleged error and the record as a whole, it is apparent that the petitioner has failed to show he is being unlawfully detained in violation of the Constitution and laws of the United States.

### 3. IMPROPER DENIAL OF MOTION TO RECUSE

■ Cross alleges that the trial court improperly denied his motion to recuse, because the trial judge was so biased and prejudiced that he could not receive a fair trial. This claim is refuted by the record. The record reveals that on February 28, 1996, Cross filed a motion for disqualification of the trial judge, the Honorable

David Cleveland, and on March 1, 1996, he filed an amended motion for disqualification. (Tr. 30–2, 34–7). On March 1, 1996, an evidentiary hearing was held on the motions before the Honorable James O. Mullin. (IX S.F. 653–737). In support of the motion, Cross testified in his own behalf, Cross' mother, Ernestine Cross, was called as a witness, and defense counsel offered testimony. *Id.* at 665–77, 682–94, 722–26. In essence, the evidence included testimony from Cross' mother that the trial judge, during the time when he was a practicing attorney, had been appointed to represent Cross' brother in an unrelated criminal proceeding. (IX S.F. 666–67). During the representation, the trial judge had a verbal altercation with Cross' mother. *Id.* at 667–68. The altercation involved comments made by the trial judge regarding the bad reputation of the "Cross boys," and disparaging remarks abut the trial judge uttered by Cross' mother, resulting in her being asked to leave the office. *Id.* at 667–68. The trial judge was subsequently permitted to withdraw as counsel and Cross' brother received new counsel. *Id.* at 669.

Cross testified at the hearing that although he had received bail on the instant case by order entered by a different judge, the subject trial judge refused to grant him bond on the then pending related revocation proceeding, requiring him to be confined throughout both the instant proceeding and revocation proceeding. *Id.* at 683–92. The reason given by the trial judge was that Cross "[had] no business running down there with that gun." *Id.* at 692. Cross testified that the judge had apparently decided as to Cross' guilt in the

---

**11.** State court findings are entitled to a presumption of correctness, and the state court's resolution of an issue will be overturned only if unreasonable. *See* 28 U.S.C. § 2254(d), (c)(1). *See also Pyles v. Johnson,* 136 F.3d 986, 989 n. 1 (5th Cir.), *cert. denied,* 524 U.S.

933, 118 S.Ct. 2338, 141 L.Ed.2d 707 (1998)(presumption of correctness pursuant to Section 2254(c)(1) applies not only to findings of the trial court, but also to those of the state appellate courts).

subject case. *Id.* After argument from counsel, the court denied the motion to disqualify or recuse the trial judge. *Id.* at 734, 735–36. A written order was entered on the motion. (Tr. 38–40).

It is well settled that the accused in any criminal trial is guaranteed the right to an impartial tribunal. *See Nethery v. Collins,* 993 F.2d 1154, 1157 (5th Cir.1993), *cert. denied,* 511 U.S. 1026, 114 S.Ct. 1416, 128 L.Ed.2d 87 (1994); *Bradshaw v. McCotter,* 785 F.2d 1327, 1329 (5th Cir.), *modified,* 796 F.2d 100 (5th Cir.1986). Generally, rulings by the judge in the same or related cases may not serve as the basis for a recusal motion. The judge's bias must be personal and extrajudicial, deriving from something other than the case. *See Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). *See also McWhorter v. City of Birmingham,* 906 F.2d 674, 678–79 (11th Cir.1990). Accordingly, to secure relief on the basis alleged, Cross needs to establish that the trial judge was influenced by interests apart from the administration of justice and that the alleged bias or prejudice resulted in rulings based on other than facts developed at trial or, as in this

case, facts that were not a matter of public record. *See United States v. Reeves,* 782 F.2d 1323, 1325 (5th Cir.), *cert. denied,* 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986). The identical issue was presented on direct appeal, and the appellate court held that Cross had not established such a bias or extrajudicial prejudice that resulted in the denial of his right to an impartial tribunal. This finding is supported by the record.[12] Cross is, therefore, not entitled to relief on his claim.

### 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Cross alleges that he received ineffective assistance of trial counsel,[13] because his lawyer failed to (1) object to an all white jury; (2) require the court to produce records that he was actually indicted; (3) file a timely motion to quash the indictment; (4) properly object to the impeachment by the state of its own witnesses (Dennis Carter and Pantria Whitfield); (5) challenge Cross' absence from the proceedings when the jury was excused due to the prosecutor's illness and move for a mistrial or dismissal of the charges on this ground; (6) properly object to the trial court's comments regard-

---

**12.** The record reveals that Judge Cleveland had granted Cross probation in an unrelated case in 1991, although Cross had a prior aggravated robbery conviction, and Judge Cleveland did not initially revoke probation after Cross had violated the conditions of his release. (IX S.F. 679–80, 728–29). The record also shows that although Judge Cleveland was assigned to the instant case sometime in late–1995, Cross waited until late-February 1996, after several appearances before Judge Cleveland, to file his motion to disqualify the trial judge. *Id.* at 694–95. During the hearing on the motion for disqualification, the trial court expressed concern regarding Cross' credibility based upon the lack of timeliness of his motion. *Id.* at 694–95, 702–03. With regard to Judge Cleveland's comment on the use of a shotgun, such reference can be traced to the indictment filed in the instant

case. (Tr. 2). The indictment specifically alleged that Cross recklessly caused the death of Larry Cross by "shooting him with a firearm, to-wit: a shotgun...." *Id.* The record further indicates that Cross had earlier been convicted of aggravated robbery and welfare fraud, all matters of public record. (IX S.F. 732–33). Thus, any comments made by Judge Cleveland regarding the reputation of Cross, or his rulings not to release Cross on bail based upon such criminal history, do not demonstrate a personal and extrajudicial bias.

**13.** Cross specifically set forth several of the sub-claims of ineffective assistance of counsel in his federal petition, and then referred this Court to his state application for writ of habeas as to the remaining sub-claims. *See Ex Parte Cross,* No. 41,764–01 at 28–39.

ing the absence of a defense witness; (7) call defense witnesses at trial; (8) request a jury instruction on excusable homicide; (9) file a motion to dismiss due to the delay of the trial proceedings; (10) object to the perjurious testimony elicited by the state from state witnesses Hoppy Carter and Yolanda Smith; (11) request a jury instruction on accomplice witness testimony; (12) request that the jury be polled after the verdict was rendered; (13) adequately prepare for the punishment phase of the trial and present character witnesses; and (14) request that the court sentence Cross to a term of probation.[14] This claim is meritless.

Thorough review of the record demonstrates that trial counsel made a reasonable investigation of the facts of the case and he was well-prepared for trial. Counsel filed several pretrial motions, several of which pertaining to discovery matters were granted. Counsel also pursued a

motion to disqualify the trial judge, which was denied only after a full evidentiary hearing, and a motion to dismiss due to the delay in the trial proceedings. Defense counsel also filed a motion to quash the indictment, arguing that the indictment failed to allege acts of recklessness. After hearing on the motion to quash, the trial court held that the motion was untimely and that it lacked merit in that it was sufficient pursuant to state law. (II S.F. 2–6, 16). Defense counsel further moved for a directed verdict, arguing that the indictment failed to properly allege recklessness and that the evidence at trial did not establish such recklessness. (IV S.F. 528–30).

■ At trial, defense counsel conducted full and extensive cross-examination of the state's witnesses, especially James Banks and the other eyewitnesses, made appropriate objections at trial, and presented the testimony of three witnesses.

---

**14.** The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel. U.S. CONST. Amend. VI. In order to prevail in this habeas corpus proceeding on his claim of ineffective assistance of counsel, the petitioner must make a particularized showing of an identifiable lapse in counsel's performance which falls below constitutional standards, and the petitioner must establish that the error was prejudicial, that is, but for counsel's error, there is a reasonable probability that the ultimate result would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Id.* at 689, 104 S.Ct. 2052 The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id.* at 697, 104 S.Ct. 2052. Further, in general, scrutiny of an attorney's performance is highly deferential and reviewing courts will

not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. *Id.* at 689–90, 104 S.Ct. 2052. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690–91, 104 S.Ct. 2052. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. *Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir.1983). Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. *United States v. Costa,* 691 F.2d 1358 (11th Cir.1982); *Coco v. United States,* 569 F.2d 367 (5th Cir.1978). A claim of ineffective assistance is a mixed question of law and fact. *Id.* at 698, 104 S.Ct. 2052. Therefore, the federal court cannot grant habeas relief unless the state court's rejection of the claim involved an unreasonable application of the law to the facts. 28 U.S.C. § 2254(d)(1).

Counsel vigorously pursued the theory through the direct and cross-examination of witnesses that while a death occurred, Cross never intended to shoot and/or kill his brother and that if Banks had not become involved in the incident, the shooting would never have happened. Defense counsel essentially argued that Larry Cross was in the wrong place at the wrong time and that Cross was just about to turn over the gun to Larry when Banks grabbed Cross. The defense contended that the gun discharged either because Banks grabbed the gun, attempting to get it away from Cross, or the grabbing caused Cross to shoot. The defense also attempted to demonstrate that Banks was not at the scene accidentally, but was there to protect his friend Hoppy, who had earlier that evening had an argument with Cross, and ensure that Cross did not use the gun on Hoppy. The fact that the jury chose not to believe the defense presented does not mean that defense counsel's performance was in any way constitutionally ineffective.

 Specifically, Cross alleges that counsel's performance was deficient because he failed to object to an all white jury, and the jury pool's composition unfairly prejudiced him because it did not reflect a fair cross-section of the community and was not a jury of his peers.[15] An assertedly discriminatory selection of a jury venire may be challenged under the Sixth Amendment when the venire fails to reflect a fair cross-section of the community. *Duren v. Missouri*, 439 U.S. 357, 99

S.Ct. 664, 58 L.Ed.2d 579 (1979).[16] There is no evidence to even suggest that the venire was selected pursuant to a practice that provided an opportunity for discrimination. Cross has failed to demonstrate that blacks and/or other recognized minorities were not fairly represented in the venire and the alleged under-representation of blacks and minorities on venires was due to systematic exclusion in the jury-selection process. *Duren v. Missouri*, 439 U.S. at 363–64, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *United States v. McKinney*, 53 F.3d 664, 671 (5th Cir.), *cert. denied*, 516 U.S. 901, 116 S.Ct. 261, 133 L.Ed.2d 184 (1995). Cross' conclusory allegations fall far short of the applicable standard, and therefore Cross has failed to show that the venire in his case was unconstitutionally selected. Cross does not meet the requirement by merely citing his jury venire as an example of underrepresentation. *See Timmel v. Phillips*, 799 F.2d 1083, 1084 (5th Cir.1986). Moreover, although the Sixth Amendment guarantees that a petit jury will be selected from a pool of names representing a cross-section of the community, the Supreme Court has expressly declined to hold that the petit jury which is actually chosen must mirror the community and reflect the various distinctive groups in the population. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), *quoting Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Therefore, counsel's performance cannot be deemed ineffective for failing to assert a challenge to the jury selection process.[17]

---

**15.** Cross is an African–American, and there were no African–Americans included within the jury pool, resulting in an all white jury. (II S.F. 100).

**16.** To establish a *prima facie* violation of the cross-section requirement, a petitioner must show that 1) the underrepresented group is a distinctive group in the community, 2) the group's underrepresentation is not fair and

reasonable in relation to the group's number within the community, and 3) the underrepresentation is due to the systematic exclusion of the group from the jury selection process. *Duren*, 439 U.S. at 364, 99 S.Ct. 664.

**17.** It should be noted that during *voir dire*, to protect Cross' right to a fair and impartial jury, defense counsel asked the all-white venire whether there was "anyone on the jury

■ With regard to the claim that he received ineffective assistance of counsel, because his lawyer improperly failed to require the court to produce records that he was actually indicted and file a timely motion to quash the indictment are frivolous in that the underlying substantive claims are meritless and therefore Cross was not prejudiced by counsel's alleged deficiency. As indicated above, there is no evidence to support the claim that the grand jury proceedings were unlawful. As to the indictment, the indictment charged Cross with recklessly causing the death of Larry W. Cross, Jr., "by shooting him with a firearm, to-wit: a shotgun." The indictment complied with TEX. CODE CRIM. PROC. art. 21.15 by alleging the act relied upon to constitute recklessness. *See Cross v. State,* No. 11–96–120–CR, slip op. at 2 (Tex.App. – Eastland 1998, pet. ref'd) and cases cited therein.

■ Cross next alleges that counsel's performance was ineffective when he failed to object to the impeachment by the state of its own witness, Dennis Carter. After Carter testified, the state requested that the witness' earlier written statement given to the police be admitted into evidence for the purposes of impeachment. (III S.F. 228–29). Defense counsel objected to the admission of the entire statement, arguing that only those portions necessary for impeachment be admitted. *Id.* The trial court agreed, and only those portions of Carter's statement necessary for im-

peachment were read to the jury. The appellate court on direct appeal in this case found the underlying claim meritless, stating that in Texas, "a party may impeach its own witness unless the witness was called for the purpose of impeaching him or introducing otherwise inadmissible evidence." *Cross v. State,* No. 11–96–120–CR, slip op. at 3, *citing,* TEX. CRIM. EVID. 607;[18] *Garcia v. State,* 887 S.W.2d 862, 873–74 (Tex.Crim.App.1994), *cert. denied,* 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). Counsel was, therefore, not deficient in this regard.[19]

■ Cross alleges that his lawyer's performance was deficient for failing to challenge Cross' absence from the proceedings when the jury was excused due to the prosecutor's illness and for failing to move for a mistrial or dismissal of the charges on this ground. In the first state habeas corpus proceeding, the trial court found that Cross was present at all times during the proceedings and, even if such an allegation were true, Cross was not prejudiced by his alleged absence. *Ex Parte Cross,* No. 41,764–01 at 148. The record is silent as to exactly when and how the jury was instructed on March 13, 1996, and thereafter, not to report for trial. *See* Vol. III S.F. 238; T. 51. The record does indicate, as discussed above in connection with claim four, that the jury was advised by the trial court of the reason for the delay and the jury was asked whether they had received any information regarding

who would have a problem sitting in judgment of a black man?" and whether any of the venire "[felt] like they [could not] judge a black man and give him a fair trial?" (II S.F. 100). Counsel stated that if so, he or she should be excused. *Id.* There was no response. *Id.* at 100–01.

18. This case was tried while the old Texas Rules of Criminal Evidence were still in effect. As of March 1, 1998, the Texas Rules of Criminal Evidence and Texas Rules of Civil

Evidence have been consolidated into the Texas Rules of Evidence. The change has no substantive impact on this case.

19. If Cross is also alleging that Whitfield was improperly impeached by the state, such a claim is frivolous. Whitfield was a defense witness and the state's impeachment of her with her previous written statement was clearly proper. (IV S.F. 505–18, 524–25).

the case from outside sources and whether they had had any discussions regarding the case during the recess before the trial reconvened. *Id.* 241–42, 243–44. When there was no response from the jury, trial proceedings resumed with the state calling its next witness. *Id.* at 245.

▮ The right of an accused to be present during all critical stages of the trial is basic and fundamental. *Rushen v. Spain,* 464 U.S. 114, 117, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983). A defendant is guaranteed the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure. *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). Due Process requires the petitioner's presence "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *overruled on other grounds by Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), but due process does not require the presence of the petitioner when her presence would be useless or only slightly beneficial, *Snyder v. Massachusetts,* 291 U.S. at 106–07, 54 S.Ct. 330. Accepting as true Cross' allegation that he and/or counsel were not present when the jury was excused, Cross has not demonstrated that a denial of fundamental due process resulted. Defense

counsel's performance can therefore not be deemed deficient in failing to challenge the proceedings on this alleged ground. Even if counsel's performance could be deemed deficient, Cross has not established the second-prong of *Strickland,* prejudice.

▮ Cross alleges that he received ineffective assistance of counsel, because his lawyer failed to properly object to the trial court's comments regarding the absence of a defense witness.[20] As held by the appellate court on direct appeal, the trial court's statement was not a comment on the weight of the evidence or a remark calculated to convey his opinion of the case to the jury. *See Cross v. State,* No. 11–96–120–CR, slip op. at 3. Rather, the court was merely expressing its frustration with the several delays in trial proceedings. The court did, however, permit a short recess, and Cross was permitted to call the tardy witness when she arrived only a few minutes late. Cross was not prejudiced by the remark and, therefore, defense counsel cannot be considered ineffective for failing to object to the brief statement by the court. *See United States v. Carpenter,* 776 F.2d 1291, 1294 (5th Cir.1985)(holding that a defendant complaining of judicial bias must demonstrate that "the error was substantial and that it prejudiced his case" to obtain a reversal of his conviction).

▮ Cross alleges that defense counsel rendered ineffective assistance,

---

**20.** The record reveals that Cross' wife was not present at the time she was called to testify. (IV S.F. 485). Defense counsel advised the court that he believed that he might need to leave the courtroom to pick up the witness at her home and drive her to court since she did not have transportation. *Id.* The court then stated:

> Well, I don't mind recessing this case for sick lawyers and bypass operations and all that, but we need to take care of logistics and not—I'm not going to waste any more

of the jury's time. We have had problems in this case and I have been very understanding, but let's get our logistics taken care of.

*Id.* at 485–86 A ten minute recess was then permitted, after which Pantria Whitfield Cross appeared as a witness to testify on behalf of Cross. *Id.* at 486. Upon direct examination, Pantria testified that she had been late arriving at the trial due to a medical emergency. *Id.* At 487.

because he failed to object to the perjurious testimony elicited by the state from witnesses Hoppy Carter and Yolanda Smith. The trial transcript indicates that the testimony of these witnesses as to certain matters contradicted their earlier statements given to the police. The prosecutor pointed out such discrepancies by comparing their initial statements with their trial testimony, attempting to determine the truth. (III S.F. 260–62, 274–77, IV S.F. 329–31). The witnesses were permitted to offer their testimony and correct the information previously provided to the police. Defense counsel fully cross-examined the witnesses. A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Faulder v. Johnson,* 81 F.3d 515, 519 (5th Cir.), *cert. denied,* 519 U.S. 995, 117 S.Ct. 487, 136 L.Ed.2d 380 (1996), *citing, Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). To prove a due process violation based upon a prosecutor's use of perjured testimony, a habeas petitioner must demonstrate that (1) the testimony was actually false; (2) the state knew that it was false; and (3) the testimony was material. *See id; Boyle v. Johnson,* 93 F.3d 180, 186 (5th Cir.1996), *cert. denied,* 519 U.S. 1120, 117 S.Ct. 968, 136 L.Ed.2d 853 (1997). The record does not support Cross' claim of perjury, much less a claim that the prosecutor in any way acted improperly or knowingly presented false testimony. *See Chambers v. Johnson,* 218 F.3d 360 (5th Cir.2000). Moreover, the jury clearly had an opportunity to judge the credibility of the witnesses. There is absolutely no evidence whatever that the prosecutor sought to elicit perjurious testimony from the witnesses. Defense counsel was, therefore, not ineffective in this regard.

Cross alleges that defense counsel's performance was deficient, because he failed to request that the jury be polled after the verdict was rendered. This claim is meritless. The record reveals that after the jury rendered its verdict, the trial court asked "[i]s that the unanimous verdict of the jury and so say each of you?" (IV S.F. 569). The jury then affirmed the verdict. *Id.* Cross also alleges that counsel improperly failed to request that the court sentence Cross to a term of probation. This claim is also without merit. Cross was not entitled to probation in that he had a previous conviction for aggravated robbery which was alleged in the indictment for enhancement purposes. *See Welch v. State,* 908 S.W.2d 258, 261 (Tex. App.—El Paso 1995, no pet.) (holding that counsel was not ineffective for failing to file a sworn motion for probation when the record indicated appellant had a prior felony conviction at the time of trial). Cross' remaining sub-claims of ineffective assistance of counsel that his lawyer failed to request a jury instruction on excusable homicide, call defense witnesses at trial, file a motion to dismiss due to the delay of the trial proceedings, request a jury instruction on accomplice witness testimony, and adequately prepare for the punishment phase of the trial and present character witnesses are frivolous and require no separate discussion.

In sum, Cross has made no showing that the outcome of the trial would have been different but for his attorney's alleged errors. The record reflects that, in light of all the circumstances of the case, the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, there was overwhelming evidence at trial demonstrating the petitioner's guilt of the crime for which he was convicted, and

it is highly unlikely that, if his attorney had acted differently, the jury would have reached any decision other than finding Cross guilty of the crime charged. Further, Cross has also not shown. that he would have received any other sentence than the one imposed by the Court. *See Spriggs v. Collins*, 993 F.2d 85, 87 (5th Cir.1993). He has, therefore, failed to prove that when viewing the allegations of ineffective assistance of counsel separately or cumulatively he was denied his right to effective assistance of counsel.

### 5. ADMISSION OF INFLAMMATORY AND PREJUDICIAL PHOTOGRAPHS

■ Cross alleges that the trial court erred when it admitted into evidence at trial, over his objection, inflammatory and prejudicial photographs of the deceased. Review of the trial proceedings reveal that two photographs of the deceased's upper torso, showing the nature and location of the wound, and one photograph of the deceased's shoulder, neck and face were admitted into evidence. (III S.F. 132–35). Cross argued that the photographs were not relevant and were not necessary to prove any issue in the case because he had stipulated to the cause of death. *Id.*

■ When it is claimed that a habeas corpus petitioner was denied a fair trial due to the admission of prejudicial or inflammatory evidence, a federal court begins with the general proposition that review of state evidentiary rulings is limited, but that faced with a claim of fundamental unfairness the question becomes constitutional rather than evidentiary, and the Court must determine whether there occurred error of such magnitude as to deny the petitioner fundamental fairness, violating the right to a fair trial. *See Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989); *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir.1983). Gruesome evidence is not necessarily inadmissible if it is introduced for an appropriate purpose. *Futch v. Dugger*, 874 F.2d at 1487 (holding that photographic evidence of a crime victim does not generally violate the defendant's right to a fair trial); *United States v. Bowers*, 660 F.2d 527, 529–30 (5th Cir.1981)(finding that a color photograph of a child's lacerated heart was held essential to the government's burden of showing the use of cruel and excessive physical force).

■ Under Texas law, photographs are admissible regardless of their inflammatory nature if they are competent, material, and relevant, and unless they are offered solely to inflame the minds of the jury. *Woods v. Johnson*, 75 F.3d 1017, 1038–39 (5th Cir.), *cert. denied*, 519 U.S. 854, 117 S.Ct. 150, 136 L.Ed.2d 96 (1996). *See also Jones v. State*, 843 S.W.2d 487, 500 (Tex. Crim.App.1992)(court held that trial judge did not abuse his discretion in admitting the photographs in that their probative value was not outweighed by their possible prejudicial effect, because these photos were few in number, depicted the wounds inflicted upon the victim, the location and position in which she was discovered, and were the subject of testimony at trial), *cert. denied*, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). In this case, only three photographs were admitted at trial, the photographs served to identify the deceased and make more understandable the condition of the deceased's body and the nature and extent of the wounds sustained by the victim, and were the subject of testimony at trial. The photographs were properly admitted by the trial judge, and therefore Cross has not demonstrated that he was denied a fundamentally fair trial in this regard. *Woods v. Johnson*, 75 F.3d at 1039.

## 6. IMPROPER JURY CHARGE

Cross claims that the trial court failed to properly charge the jury regarding accomplice witnesses and the law of the parties or criminal responsibility of a co-conspirator with regard to the subject offense. Specifically, Cross alleges that James Banks, a witness who testified on behalf of the state should have been charged with the crime of murder, or at the least the same crime as he had been charged with, because it was actually Banks who caused the gun to discharge during the struggle with Cross, resulting in the death of Cross' brother, Larry Cross. Cross further alleges that Banks was not so charged, because he had entered into an agreement with the state to testify against Cross in exchange for his freedom from prosecution.[21] *See Ex Parte Cross*, No. 41,764–01 at 40–50.

Alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. *Bryan v. Wainwright*, 588 F.2d 1108 (5th Cir.1979); *Pleas v. Wainwright*, 441 F.2d 56 (5 Cir. 1971). A jury charge is adequate if, viewed as a whole, it fairly and correctly states the issues and law. *See United States v. Russell*, 717 F.2d 518, 521 (11th Cir.1983); *United States v. Bosby*, 675 F.2d 1174, 1184 (11th Cir.1982). When viewing the subject charge in its entirety, it cannot be said that Cross suffered any prejudice from the jury charge. In this case, Cross was not entitled to such an instruction on accomplice testimony,[22] because Cross was the only individual charged with the crime and there was no evidence presented at trial that anyone other than Cross was responsible for the death of the victim, although Cross may believe otherwise.[23] Thus, the state courts during the first habeas corpus proceeding correctly found that the record did not support such a charge. In conclusion, the

---

21. In sum, Banks testified at trial that Banks observed Cross with a shot gun and Cross' wife attempting to disarm Cross. Banks approached the struggling couple, and he took hold of Cross. Banks instructed Cross' wife to get the gun, and Cross' wife grabbed the barrel of the shotgun. Cross then attempted to regain control over the gun and, in the process, he swung around. The gun then discharged, shooting Larry Cross, who was approaching the scene as the struggle was unfolding. Larry was shot in the left upper torso and abdomen, resulting in his death at the hospital shortly thereafter. (IV S.F. 306–430).

22. In Texas, a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, the conduct of another for whom he is criminally responsible, or both. TEX. PENAL CODE ANN. § 7.01(a). A person is criminally responsible for an offense committed by another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

23. Although Cross was not entitled to such a jury instruction, the issue of responsibility was before the jury. Defense counsel attempted to pass some of the blame for the shooting onto Banks and was permitted to ask Banks the following question during cross-examination: "The tussel (sic) over the gun is what really caused the shooting of the gun, wasn't it?" (IV S.F. 422). Banks responded: "I have no idea." *Id.* Defense counsel further argued during closing statement that Banks lacked credibility in that he had an ulterior motive for disarming Cross and that Banks was, if not solely responsible, at least partly responsible for the shooting and ultimate death of Larry Cross. (IV S.F. 544–49). Witnesses were also presented on Cross' behalf, testifying that Cross was about ready to hand over the gun to Larry Cross immediately prior to Banks' involvement in the situation, and if Banks had not embroiled himself in the skirmish, Larry Cross would not have been shot. (IV S.F. 450–51, 468–69, 498–99).

trial court's instruction to the jury in no way rendered the trial fundamentally unfair.

### 7. CONCLUSION

 In conclusion, for those claims raised by Cross on direct appeal or in his state application for habeas corpus relief that were reviewed on the merits, it is apparent from review of the record as a whole that Cross' claims are meritless. Accordingly, the state courts' determinations that Cross was not entitled to relief were not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief should therefore be denied pursuant to 28 U.S.C. § 2254(d).[24] All remaining claims are procedurally barred from federal habeas corpus review.

### I. EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing. Section 28 U.S.C. § 2254(e)(2) provides that a court shall not conduct an evidentiary hearing unless a petitioner failed to develop a claim in state court, provided that the claim relies on a new rule of constitutional law or on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and the facts would "establish by clear and convincing evidence" the petitioner's actual innocence. *See Williams v. Taylor*, 529 U.S. 420, 433–37,

120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Cross has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing.

### *RECOMMENDATIONS*

Since Petitioner has failed to make a substantial showing of the denial of a federal right, the petition for writ of habeas corpus should therefore be denied. It is further recommended that petitioner's request for an evidentiary hearing be denied.

### *NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT*

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendations within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file, not merely place in the mail, specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendations until March 28, 2001. Pursuant to *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir.1996)(en banc), failure to file specific written objec-

---

**24.** It should be noted that the trial court judge presiding over the trial proceedings was the same judge who presided over the state habeas corpus proceedings and was therefore the judge who, after reviewing the entire record in the case, recommended denying the application for writ of habeas corpus. Where the state habeas court was the same court that presided over the trial proceedings, the presumption of correctness afforded the findings of fact of the state court is particularly

strong. *See May v. Collins*, 955 F.2d 299, 314 (5th Cir.), *cert. denied*, 504 U.S. 901, 112 S.Ct. 1925, 118 L.Ed.2d 533 (1992). Moreover, the Texas Court of Criminal Appeals' denial of Cross' state application for writ of habeas corpus without written order constitutes an adjudication on the merits. *See Jackson v. Johnson*, 150 F.3d 520, 524 (5th Cir.1998); *Ex Parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim.App.1997).

tions within the specified time shall bar a *de novo* determination by the district court of any finding of fact or conclusion of law and shall bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any unobjected-to proposed factual findings and legal conclusions accepted by the district court.

*ORDER SETTING DEADLINE FOR OBJECTIONS TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS*

Pursuant to Section 636, Title 28 of the United States Code, it is hereby ORDERED that each party is granted until March 28, 2001, to serve and file, not merely place in the mail, written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendations. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections. It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendations, be and hereby is returned to the docket of the United States District Judge.

March 7, 2001.